# WILSON v. RIDDLE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF GEORGIA.

Argued November 30, December 1, 1887. — Decided December 12, 1887.

In April, 1853, R. made a deed to himself, as trustee, of land in Georgia, for the benefit of his wife and their children, during the life of the wife, and, after her death, of such children, which deed was recorded in May, 1853, in the office of the clerk of the Superior Court of the county in which R. resided. In May, 1870, R. mortgaged to W. the trust land and other land. W. foreclosed the mortgage, and on a sale, in 1876, bid in the mortgaged lands, and obtained from the sheriff a deed of them and took possession of them. In 1881, the beneficiaries under the trust deed brought a bill in equity in the Circuit Court of the United States, against W., to have the trust established. Among the defences set up by W., he alleged that the trust deed was fabricated after the mortgage was made, and was antedated, and that he had no notice of the existence of the trust deed at or before the execution of the mortgage of May, 1870, or before the sheriff's sale in 1876. The Circuit Court, without making any previous order for the trial of issues of fact by a jury, had a trial by jury of the two questions above mentioned. The jury found in favor of the plaintiffs on both questions. The defendant had bills of exceptions signed to the rejection of evidence and to the instructions to the jury. The suit in equity was heard by the same judge who presided at the jury trial. No motion was made for a new trial. The decree was for the plaintiffs, on the same proofs which were before the jury. On appeal by the defendant, *Held*:

(1) No previous order for a jury trial was necessary, nor any certificate to the chancellor of the findings;

(2) The submission to the jury of the particular issues was not an unlawful exercise of the discretion of the Circuit Court;

(3) The formal exceptions taken on the jury trial will not be considered by this court;

(4) The decree was correct, on the facts;

(5) The voluntary settlement was authorized by the statute law of Georgia in force at the time it was made, it having been recorded within three months, and was good against W., under such statute law, because of the notice of its existence, which he so had.

IN EQUITY. Decree in favor of plaintiffs. Defendant appealed. The case is stated in the opinion of the court.

*Mr. Clifford Anderson* for appellant.

*Mr. George A. Mercer* for appellees.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit in equity, in the Circuit Court of the United States for the Southern District of Georgia, originally brought as an action of ejectment, by the wife of William C. Riddle, four of their married daughters, an unmarried daughter, three sons, and two daughters of a deceased daughter, against J. Ben. Wilson, in the Superior Court of the county of Washington, in the State of Georgia, in August, 1881, to recover the possession of 1500 acres of land, and the mesne profits thereof, alleged to be of the yearly value of $1300, since the 1st of January, 1877.

The original petition, by which the suit was brought, alleged that in the year 1853 the said William C. Riddle, then being the owner of the 1500 acres of land, conveyed the same, by deed of trust, to himself, as trustee for the petitioners, and that, although the defendant was in possession of the land, setting up a claim of title adverse to the title of the trustee and of the petitioners, Riddle, in violation of his trust, refused to bring suit for the recovery of the land or to collect the rents and profits.

In March, 1882, J. Ben. Wilson appeared and disclaimed all title to the land in dispute, and averred that he had never received any of the rents or profits thereof. At the same time, Benjamin J. Wilson, his father, appeared and asked to be made a party to the suit, claiming to be the owner of the land in dispute, and was, by an order of the court, made a party defendant. He being an alien, and the petitioners being citizens of Georgia, the suit was removed by him into the Circuit Court of the United States for the Southern District of Georgia, under the act of March 3, 1875. After the removal of the cause, the original petition or declaration was amended by adding, as parties plaintiff, William C. Riddle and the husbands of the four married daughters. The Circuit Court then, by an order, placed the case on the equity docket,

and directed that the plaintiffs reform their pleading, so as to present their cause of action in an equitable shape.

In December, 1882, all of the above named plaintiffs filed in the Circuit Court a bill in equity against Benjamin J. Wilson, making the following averments: On the 23d of April, 1853, William C. Riddle, in consideration of natural love and affection for his wife and children, conveyed to himself, as trustee, for the use, benefit, and advantage of his wife and their children, for and during the natural life of the wife, "and, on her decease, to such child or children, or representative of child or children, as she might leave in life," two tracts of land in the county of Washington, one of 1000 acres, known as the Brantley Mill place, and the other of 500 acres, known as the Brown place, to be held forever free from the debts, liabilities, and contracts of Riddle and all other persons. The trust deed was duly recorded, on the 26th of May, 1853, in the office of the clerk of the Superior Court of the county of Washington. Riddle, after the conveyance, held the lands as trustee for his wife and children only, and under the terms of the trust deed. In 1866, Riddle was engaged in planting operations, and, in order to raise money, applied to the firm of Wilkinson & Wilson, doing business in Savannah, of which the defendant was a member. That firm, in consideration of consignments of cotton to be sent to them by Riddle, advanced to him, on his own account and not for the trust estate, large sums of money. The defendant was obliged to raise the money so supplied on the credit of his firm, and to furnish to parties advancing the money to his firm planters' notes and mortgages and other collateral security. On his request, Riddle gave a mortgage lien, for a large amount, upon lands owned by him in his own right, and in that mortgage included the lands embraced in the trust deed. Riddle, at the time he created such mortgage lien, notified the defendant that part of the lands was trust property, but the defendant replied that it did not matter, as he only wished to use the lien as collateral. The defendant took the lien with full notice that it included the trust estate, as well as the individual property of Riddle. In 1870, the first mortgage was cancelled and a new mortgage lien was

given to the defendant, at his request, which lien was taken by him with full notice that the trust estate was included in the lien. The defendant, with such knowledge, caused the lien to be foreclosed, and, in 1877, bid in all the lands covered by it, including the trust estate, and caused a deed of the lands to be made to him by the sheriff of the county, and took possession of the trust estate with full notice of the rights of the plaintiffs. An answer on oath is waived, and the prayer of the bill is for a decree for the restoration to the plaintiffs of the trust lands and the recovery of the mesne profits; that the defendant be adjudged to hold the lands only as trustee for the plaintiffs, and be required to convey them to Riddle, or some other person, as trustee, on the uses and trusts contained in the deed; that the mortgage lien and the deed to the defendant under the foreclosure be declared null and void as to the trust estate, and reformed or cancelled, so as to remove the cloud upon the title of the plaintiffs; and for general relief.

The answer of the defendant to the bill, filed in February, 1883, raises an issue as to the making and recording of the deed of trust. It avers, that, after the date of the deed, Riddle continued in possession of the land as before, claiming and using it, and paying taxes on it as owner, in his individual capacity, and not as trustee. It admits that the firm of Wilkinson & Wilson furnished money and plantation supplies to Riddle, from 1866 to 1870, on consignments by him of cotton to that firm. It avers that, at the close of the transactions, Riddle owed the firm over $80,000; that he gave no notice of any trust; that he gave a mortgage, as security for such indebtedness, covering his entire plantation and embracing the lands in controversy, with others; that he did not, before or at the time of the execution of the mortgage, notify the defendant that part of the lands was trust property; that he was then in possession of the premises, using them as his own; that the first mortgage was superseded by a second one, which was also taken without notice and under like circumstances of possession and use by Riddle; that money and supplies were advanced on the faith of the second mortgage; that, after its foreclosure, the whole mortgaged premises, except 3000 acres,

were sold at sheriff's sale under the mortgage *fi. fa.*, and the defendant became the purchaser; that at the sale no distinct notice was given of the trust claim or any particular claim, nor was any specific portion of the premises sold designated as the subject of an adverse title; that something was said to the effect that whoever bought would have trouble, but the warning, such as it was, applied alike to all the premises sold, and there was nothing to restrict it to the land in controversy or any other definite part; that the defendant heard nothing then about any trust; that the 3000 acres not sold had been claimed, in the mode applicable to claims under the laws of Georgia, by Mrs. Riddle, and so could not be sold at that time; that she suffered the property now in controversy to be sold, without interposing any claim to it, although it was embraced in the same levy with the 3000 acres which she did claim; that it is not true that the defendant knew that the mortgage deed included any trust land when he caused the mortgage to be foreclosed, nor did he know that the lands now in controversy were trust lands when he purchased them at the sale and took the sheriff's deed for them, nor did he have notice of the alleged right of the plaintiffs when he took possession of his purchase, unless what was so said at the sale, as above set forth, amounted to such notice; and that, even if it did, the right of the defendant could not be affected by notice, as he and his firm were innocent mortgagees for value, and had no notice at the time they gave credit and took the security. In April, 1883, the answer was amended by averring that the trust deed was not executed, signed, or delivered, nor even written, at the time it bears date, nor until within the last few years; that it is a much younger instrument than the mortgage under which the defendant claims title; and that it was fabricated and antedated, and not recorded, and could not have been recorded, at the time the certificate of record entered on it represents it to have been recorded.

Issue being joined, the proofs on both sides were taken by depositions, according to the usual practice in equity cases. In December, 1883, a jury trial was had. The record does not disclose any order of court for the trial of feigned issues, or

of issues of fact, by a jury, but merely states, that, on the 5th of December, 1883, a jury was empanelled to try certain issues of fact, and gives the names of the jurors, and states the appearance of the respective parties at the trial, and the result, as follows: .

"To the first issue of fact submitted by the court, to wit, ' Is the deed of trust presented a true, valid, and authentic instrument executed at the time it purports to be?'

"We, the jury, find that the deed of trust presented is a true, valid, and authentic instrument executed at the time it purports to be."

"To the second issue of fact submitted by the court, to wit, ' Did the defendant, B. J. Wilson, have notice of the existence of this trust deed at or before the execution of mortgage by plaintiff to defendant, May 5; 1870, or before the sheriff's sale in 1876?'

"We, the jury, find that the defendant, B. J. Wilson, had notice of the existence of this trust deed at or before the execution of the mortgage by plaintiff to defendant, May 5, 1870, and before the sheriff's sale in 1876."

There are eight bills of exceptions found in the record. One of them sets forth an exception by the defendant. to the submission to a jury of the issues of fact arising in the case; four of them contain exceptions by the defendant to the rejection of evidence; and three of them contain exceptions to instructions given to the jury.

On the 6th of December, 1883, the Circuit Court made a final decree, which contains no reference to the jury trial, but states that the cause came on to be heard and was argued by counsel, and that the court; upon the proof submitted, finds and decrees that the deed of trust "is a true, valid, and authentic instrument, executed at the time it purports to be;" and "that the defendant, B. J. Wilson, had notice of the existence of this trust deed at or before the execution of the mortgage by the complainant, William C. Riddle, to defendant, May 5, 1870, and before the sheriff's sale in 1876." These findings are in the exact language of the findings of the jury. The decree then proceeds to adjudge that the defendant

acquired no valid title to the lands embraced in the trust deed by virtue of the sheriff's deed made to him in 1876; that the 1500 acres of land embraced in the trust deed are the property of the wife of Riddle and her children and grandchildren, under the terms and provisions of the trust deed; that the decree, by its own force and effect, establishes in and confirms to Riddle, trustee, and his successors in the trust, his right and title to the land, with the appurtenances and the rents and profits, upon the uses and trusts set forth in the deed, with full right to the possession, use, and control of the same; that the defendant, by the 1st of January, 1884, do restore the possession, use, and control of the trust estate to Riddle, trustee, and his successors in the trust; that the mortgage lien created by Riddle, May 5, 1870, to the defendant, and the deed executed and delivered to the defendant by the sheriff of the county of Washington in 1876, are null, void, and of no effect, as to the land and appurtenances embraced in the trust deed; and that the plaintiffs are entitled to $3166.50 for the rents and mesne profits of the land, from the period when the defendant first took possession and control of it to the date of the decree, to be recovered by Riddle, trustee, or his successors in the trust; that process of execution for the recovery of the same issue against the property of the defendant; and that the plaintiffs recover from him the costs of the suit. From this decree the defendant has appealed to this court.

The defendant objects to the submission to the jury of the issues of fact, on the ground that the chancellor should have first made an order directing a trial by a jury, at law, on issues framed; that the verdict of the jury on such issues should have been duly certified to the chancellor; that, on the contrary, a jury was called into the court of chancery and issues were submitted to it by the chancellor; that the findings of the jury were not properly before the chancellor, and he should have given no weight to them; and that no weight should be given to them by this court.

But we are of opinion that there is no force in this objection. It appears by the record that the same judge before whom the jury trial was had, acted as chancellor in making the decree in

the suit in equity; and that the proofs taken and relied upon on the hearing in the suit in equity were the same proofs which were before the jury on the trial of the issues of fact. Under these circumstances, a previous order for the trial by jury, and any certificate of the result, by the judge presiding on the trial, to himself as chancellor, were unnecessary, although it would have been more formal if the court in equity had ordered a jury to be empanelled on the law side of the court, and the verdict had been certified by the clerk to the equity side, as was done in *Kerr* v. *South Park Commissioners*, 117 U. S. 379.

As to the objection to the submission to the jury of the issues passed upon by them, it is sufficient to say that the question of such submission was one for the discretion of the Circuit Court, and that it seems to have been not an unlawful exercise of such discretion to submit to the jury the particular issues upon which they passed.

The defendant assigns for error the rejections of evidence set forth in the bills of exceptions, and the instructions to the jury which were excepted to. No motion for a new trial was made in the Circuit Court. The submission of the issues to the jury was for the information of the conscience of the chancellor. It is evident, from the terms of the decree, that the chancellor adopted the findings of the jury as being satisfactory to him upon the whole testimony in the case, for the decree states that the court makes its finding "upon the proof submitted." Under such circumstances, it is not the practice of an appellate court to consider formal exceptions to rulings in the course of the trial of the issues before the jury. *Brockett* v. *Brockett*, 3 How. 691; *Johnson* v. *Harmon*, 94 U. S. 371; *Watt* v. *Starke*, 101 U. S. 247.

On the two issues submitted to the jury, we concur with the Circuit Court in its conclusions stated in the decree, which were in accordance with the findings of the jury, and in its other conclusions stated in the decree. We understand the finding of the decree to be, that the defendant had actual, and not merely constructive, notice of the existence of the trust deed, at or before the execution of the mortgage to him in

1870, and before the sheriff's sale in 1876; and we concur in that finding. It is not necessary to discuss the evidence.

Nor do we consider it necessary to pass upon the question of the effect, as constructive notice to the defendant, of the recording of the trust deed in the office of the clerk of the Superior Court of Washington County, in May, 1853, in view of the destruction of the records of deeds in that office by fire in 1864.

The defendant had no dealings, as a creditor, with Riddle, until the fall of 1866, but nevertheless he contends, that a voluntary deed of trust, such as that in the present case, was not good as against him, as a *bona fide* purchaser or mortgagee for value, even though he had actual notice of the voluntary deed at the time of the purchase or mortgage. We understand the law of Georgia to have been otherwise. A voluntary settlement such as was made in this case was authorized by the statute law of Georgia in force at the time, provided the conveyance was recorded in the office of the clerk of the Superior Court of the county of the residence of the husband, within three months after its execution. That was done in the present case, as the proof shows.

Section 1776 of the Code of Georgia, in force at the time the deed was made, provided that a husband might, at any time during coverture, either through trustees, or directly to his wife, convey any property, subject to the rights of prior purchasers or creditors without notice. Such a conveyance for the benefit of the children and grandchildren of the grantor, was also valid, if he was solvent, and if the provision was a proper one and free from fraud. Section 1778 of the Code, enacted in 1847, provided that every voluntary settlement made by the husband on the wife should be recorded in the office of the Superior Court of the county of the residence of the husband within three months after the execution thereof; and that, on failure to comply with this provision, such settlement should not be of any force or effect against a purchaser, or creditor, or surety, who *bona fide* and without notice, might become such before the actual recording of the same. Section 2305 provides that a trust estate may be created for the use of

some other person than the grantee; that no formal words are necessary to create such an estate; and that, whenever a manifest intention is exhibited that another person shall have the benefit of the property, the grantee shall be declared a trustee. Section 2632 provides that every voluntary deed shall be void as against subsequent *bona fide* purchasers for value without notice of such voluntary conveyance. It follows, from these provisions, that as the deed in this case was recorded in due time, it was valid as against the defendant, who had notice of it before the mortgage to him of May, 1870, was executed, and before the sheriff's sale in 1876. This result is in accordance with the decisions of the Supreme Court of Georgia. *Gordon* v. *Green*, 10 Geo. 534, 543; *Horn* v. *Ross*, 20 Geo. 210, 223; *Cummins* v. *Boston*, 25 Geo. 277, 283; *Brown* v. *Spivey*, 53 Geo. 155; *Adair* v. *Davis*, 71 Geo. 769.

The decree of the Circuit Court is

*Affirmed.*