OIL WELL SUPPLY CO. v. HALL et al.

(Circuit Court of Appeals, Fourth Circuit. February 2, 1904.)

No. 504.

1. BANKRUPTCY—INVOLUNTARY PROCEEDINGS—DISCRETION TO SUBMIT ISSUES TO JURY.

Issue having been joined in a petition in involuntary bankruptcy against a partnership, and a jury trial waived, defendants subsequently filed an amended answer admitting insolvency, but not admitting the commission of the acts of bankruptcy charged, and praying that they be adjudged bankrupts on certain conditions. The district judge refused to act upon such answer, and certified the cause to the Circuit Court, which permitted the withdrawal of the amended answer, and submitted the issue joined by the original answer to the jury, which returned a verdict for defendants. The result having been reported back to the District Court, the judge therein adopted the verdict and dismissed the petition. *Held*, that the action taken was not under section 19 of the Bankruptcy Act, (Act July 1, 1898, c. 541, 30 Stat. 551 [U. S. Comp. St. 1901, p. 3429]), but was within the discretion of the court—the verdict being taken as advisory, merely—and that, where it appeared that the matter was fairly tried upon its merits, the order of dismissal would not be reversed on appeal because of informality in the procedure.

Appeal from the District Court of the United States for the Northern District of West Virginia, at Clarksburg, in Bankruptcy.

This case comes up on appeal from the District Court of the United States for the Northern District of West Virginia, sitting in bankruptcy. The Oil Well Supply Company and the Jarecki Manufacturing Company, corporations of Pennsylvania, with the National Supply Company, a corporation of West Virginia, filed in the District Court their petition in bankruptcy against James F. Hall and Curtis I. Hall, copartners as Hall Bros., charging them as being insolvent, and, within four months next preceding the date of the petition, with having committed an act of bankruptcy, to wit, concealing and removing, and permitting to be concealed and removed, part of their property, with intent to hinder, delay, and defraud their creditors. Upon consideration of the petition, his honor Judge Jackson, District Judge, issued his rule calling upon the alleged bankrupts to show cause before him at Parkersburg, W. Va., on 16th June, 1902, why the prayer of the petition be not granted. The respondents appeared, and filed a paper which contains a notice to dismiss the petition for want of lawful process, and a demurrer, a plea, and an answer. The plea is that the petitioners have no provable debts against them. The demurrer and the answer set up the same or similar defenses, as follows: "First, no valid or legal process has been issued upon the petition or served upon the defendants; second, the petition does not allege an act of bankruptcy on the part of the defendants, or either of them, within four months next preceding the filing of the same; third, the petition does not allege that the petitioners are, and each and every one of them, without lien or preference for their claim against the said defendants; fourth, the petition does not set forth any provable debt on the part of any or all of the said petitioners against the said defendants; fifth, the petition does not properly allege the insolvency of the said defendants; sixth, the petition does not allege any fact from which the court may draw the legal inference that the defendants have, within four months next preceding the filing of the said petition, committed any act of bankruptcy. The defendants pray judgment of the court whether they should further defend this proceeding, and that they may be hence dismissed, with their costs in this behalf expended. That no valid or legal process has been issued or served upon the defendants. That the petition does not allege any act of bankruptcy on the part of the defendants, or either of them, within four months next preceding the filing of the same. That the petition does not allege that the petitioners are each and

every one of them without lien or preference for their claims against the said defendants. That the petitioners are not each of them without lien or preference for their claim against the said defendants. That the petition does not set forth any provable debt due to either or all the said petitioners by the said defendants. That the petition does not properly allege the insolvency of the said defendants. That the petition does not allege any facts from which the court may draw the legal inference that the defendants, within four months next preceding the filing of the said petition did, both or either of them, commit an act of bankruptcy. The defendants deny that they, or either of them, have committed the act of bankruptcy set forth in said petition, or that they are insolvent, and aver that they should not be adjudged bankrupts for any cause set forth in said petition, and this they pray may be inquired of by the court."

The questions thus made came before the District Court. The motion to dismiss the petition was refused, but the demurrer was sustained, and leave was given to the petitioning creditors to amend their petition. Leave was given to file the plea and answer, subject to the right to file the demurrer. The order closed with these words, "The right of trial by jury is waived by said alleged bankrupts," and the cause was continued. The creditors amended their petition pursuant to the leave granted. Thereupon the respondents demurred to it on several grounds. The demurrer came on to be heard on 23d August, 1902, and was overruled on all points but one, and that was allegation of new matter. Respondents then asked leave to amend their answer theretofore filed. This was allowed, and the following reference ordered: "And all questions and matters properly arising under the pleadings herein are referred to George W. Johnton, one of the referees of said cause in bankruptcy, for the purpose of taking such testimony as the petitioners herein may adduce in support of the issues raised by the pleadings herein, and such testimony, also, as may be adduced by the alleged bankrupts in opposition thereto, and to report his findings herein to this court, along with the testimony taken hereunder, as soon as practicable; but, before the said referee shall proceed to execute this reference, he shall give ten days' notice to all parties of record, or their attorneys, of the time and place of such hearing."

The parties went before the referee. Thereupon respondents filed their amended answer, in the words following: "The alleged bankrupts, the firm of Hall Bros., composed of James F. Hall and C. I. Hall, trading as such firm, and James F. Hall and Curtis I. Hall, each of them individually, desire to amend their answer heretofore filed in this cause, and for amended answer, say, first, that they as a firm, and they—each of them—individually, are unable to pay and discharge the debts now owing by the said firm, and by them and each of them individually, and are willing to be adjudged bankrupts; second, that their inability to pay their said debts results from the fact that they were prevented from the completion of certain contracts under which they were operating, and certain other contracts under which they were about to begin operations, by the institution of certain suits and the issuance and levy of certain attachments in the circuit court of Tyler county, West Virginia, on or about the 7th day of March, 1902. Therefore the said firm of Hall Bros., James F. Hall and Curtis I. Hall, and each of them individually, pray this honorable court that they, as such firm, and each of them as individuals, may be by this court adjudged bankrupts, and discharged from the payment of all debts properly dischargeable in bankruptcy; that the order adjudging such bankruptcy shall give the respondents a period of ten days in which to prepare and file a statement of their joint and several properties, assets, debts, and liabilities; that by the said order a trustee be appointed to take charge of and administer their joint and several estates according to law; that said order shall further show that the order heretofore issued by this honorable court in this cause staying the attachment proceedings and other proceedings in the circuit court of Tyler county, West Virginia, be, and shall be thereby, dissolved, and that the trustees so appointed be authorized and directed to defend the said attachment proceedings, and to move the said court to quash and vacate all attachments issued and executed upon the property of the respondents, to the end that there may be perfected in the said trustee a right of action, full and complete, for damages for the unlaw-

ful detention of the property so attached for the benefit of the estate of the respondent bankrupts; that the order dissolving the said staying order shall likewise authorize the said James F. Hall, in his own name and for his own benefit, to proceed with his defense to an order of arrest issued and executed against him in connection with one of the causes pending in the circuit court of Tyler county, West Virginia, to which the said staying order was addressed. And your respondents will ever pray."

The referee marked this amended answer "Filed," to be read as part of the testimony in the case. The referee reported all this to the court, adding: "And the petitioners, by their counsel, not desiring at this time to take any testimony in the matter, submit the questions raised on the answer to the court, and the parties, by their counsel, agreeing that the matters arising on the answer shall be heard before the Honorable John J. Jackson, judge of said court, at Parkersburg, on the 30th September, 1902, at 11:30 o'clock a. m." The cause came up before the judge, and, by an order made as in the District Court, he says: "This cause came on this 30th September, 1902, to be heard upon the papers heretofore read, and the decrees heretofore entered, and upon the answer filed by the bankrupts, in which they admit they are bankrupts, but upon conditions stated in the answer that this court is of opinion should not be attached to any admission of that character, not at this time to adjudicate them bankrupts, but to continue the motion to the plaintiff to have the defendants adjudicated bankrupts until the next term of this court, sitting in Parkersburg, in January next, at which time the case can be submitted to a jury to determine whether or not they should be adjudicated bankrupts." The order then names a trustee, and makes some other provisions not bearing on the issues before us. There is no District Court at Parkersburg. This order of 30th September is explained by an order taken in the Circuit Court on 22d January, 1903, as follows: "This day came the parties, by their attorneys, and it appearing that, heretofore, to wit, on 30th September, 1902, the judge of the United States District Court for the Northern District of West Virginia made an order directing that the fact of the commission by Hall Bros. of an act of bankruptcy, and the fact of their insolvency, be certified to the Circuit Court of the United States for the Northern District of West Virginia for trial before a jury, it is ordered that this cause be docketed in the Circuit Court of the United States for the Northern District of West Virginia for further proceedings to be had therein." The hearing was fixed for 17th March next thereafter, and on that day in the Circuit Court this order was entered: "This cause came on this day to be heard pursuant to the order entered herein on the 30th day of September, 1902, directing that this cause be referred to a jury of the court to determine whether or not the alleged bankrupts had been guilty of acts of bankruptcy as in the petition alleged, whereupon the alleged bankrupts, by counsel, moved the court for leave to withdraw their amended answer; and to permit their answer to the original petition to be filed and considered as an answer to the amended petition, to which motion the petitioning creditors, by counsel, objected, which objection was overruled, and leave was given by the court, and said answer is ordered to be filed and considered accordingly."

This case was then tried before a jury, and verdict had for respondents. A motion was made for a new trial, which was refused in the Circuit Court. The result of the trial of the case in the Circuit Court having been reported to the District Court, a decree was entered adjudging that the petition of the petitioning creditors be dismissed, with costs, but allowing an appeal to this court. It is here on assignments of error as follows: "First, the court erred in failing and refusing to adjudge the said Hall Bros. bankrupts upon the petition of your petitioners; second, the court erred in dismissing the petition wherein petitioners pray that said Hall Bros. be adjudged bankrupts; third, the said court erred in directing the trial by jury in said proceeding as to whether the said Hall Bros. were guilty of the acts of bankruptcy charged by your petitioners in their petition; fourth, the court erred in refusing to set aside the verdict of the jury upon said trial, which found said defendants Hall Bros. not guilty of the acts of bankruptcy charged against them as aforesaid; fifth, the said court erred in not setting aside the said verdict

because the said trial had been improperly and illegally directed in said proceeding; sixth, the court erred in failing to adjudge the said Hall Bros. bankrupts upon their final answer in said cause."

C. D. Merrick, for appellants.

Waller R. Staples, for appellees.

Before GOFF and SIMONTON, Circuit Judges, and McDOW-ELL, District Judge.

SIMONTON, Circuit Judge (after stating the facts as above). It is very clear that the case below was not submitted to the jury under the provisions of the nineteenth section of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 551 [U. S. Comp. St. 1901, p. 3429]). The respondents did not demand a jury. Indeed, the record states that a jury was waived. But the District Judge, of his own motion, and for his own satisfaction, desired the aid of a jury in passing upon the question whether an act of bankruptcy had been committed, as charged in the petition. It is always within the discretion of a judge to seek the aid of a jury in solving a question of fact. In the court of chancery the chancellor can do this, either by ordering an issue out of chancery to be tried in the law court, or by impaneling a jury himself in his own court, and submitting the question to them himself. Wilson v. Riddle, 123 U. S. 615, 8 Sup. Ct. 255, 31 L. Ed. 280; Idaho, etc., Co. v. Bradley, 132 U. S. 509, 10 Sup. Ct. 177, 33 L. Ed. 433. In all such cases the verdict of the jury is advisory—not binding on the court, which must for itself determine the issues. This was the course pursued here. The judge presented the issue to the jury, but he afterwards adopted their conclusion, and gave effect to it by his own decree. This he need not have done if the jury trial had been had under the nineteenth section of the bankruptcy act. In carrying out his purpose to seek the aid of a jury, he used a jury in the court over which he was about to preside, and which best suited his convenience—the jury in the Circuit Court at Parkersburg. As the verdict of the jury was sought by himself to aid his conclusion, he could select any jury, especially as the jurors in the District and Circuit Courts of the United States can be used in either court.

As the jury was called by himself to his aid, it would seem that he had the right to formulate the issue upon which he desired them to pass. Therefore, when he chose the issue presented in the original answer, and withdrew the issue presented in the amended answer, he was within his discretion. Especially was this the case when the amended answer was unsatisfactory to him, because it did not admit any act of bankruptcy antecedent to the filing of the petition and annexed conditions which he would not allow. Beside this, if he had used the amended answer in determining the issue, there would have been no controversy; this amended answer admitting the affirmative of the issue. The petitioning creditors were not surprised at this action of the judge, nor were they taken at a disadvantage. They did not move for a continuance on either of these grounds, but they presented their witnesses, went to trial, and the witnesses were all examined. Exceptions were taken during the

course of the trial, which were afterwards argued. The cause had all the formalities and safeguards of regular trial. When it was ended, a motion for a new trial was entered. The judge then took the matter under advisement, and made his own judgment. It would seem that full examination was made, and substantial justice was effected. The petitioners had every opportunity of making out their case. Its merits were passed upon by the court after he had had the aid of the jury. Lancaster v. Collins, 115 U. S. 222, 6 Sup. Ct. 33, 29 L. Ed. 373; Deery v. Cray, 5 Wall. 575, 18 L. Ed. 653. In Allis v. Insurance Co., 97 U. S. 144, 24 L. Ed. 1008, the court says, "When it can be seen that no harm resulted to appellant, this court will not reverse a decree on account of an immaterial departure from technical rules of proceeding." It is true that there were informalities—perhaps it should be said disregard of forms—but they do not appear to us to be reversible errors.

The judgment of the court below is affirmed.