## In re NEASMITH.

(Circuit Court of Appeals, Sixth Circuit. July 10, 1906.)

### No. 1,541.

1. BANKRUPTCY—ISSUE OF INSOLVENCY—JURY TRIAL—REVIEW.

A trial by jury of the issues of fact raised on an involuntary bankruptcy petition authorized by Bankr. Act July 1, 1898, c. 541, § 19a, 30 Stat. 551 [U. S. Comp. St. 1901, p. 3429], is a trial according to the ordinary course of a common-law jury trial, and if error is committed it can only be reviewed on an application for a new trial or on a writ of error, and not by appeal.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, § 915.

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. SAME—ISSUES—PARTNERSHIP—MEMBERSHIP.

On an involuntary bankruptcy petition against the members of an insolvent partnership, the question whether one of the alleged partners

was in fact a member of the firm is not a question which should be submitted to a jury authorized to try issues of fact in such proceedings, by Bankr. Act July 1, 1898, c. 541, § 19a, 30 Stat. 551 [U. S. Comp. St. 1901, p. 3429].

3. SAME.—RIGHT TO JURY TRIAL—WAIVER.

Failure of an alleged involuntary bankrupt to formally apply for a jury in writing at or before the time when an answer was required, as provided by Bankr. Act July 1, 1898, c. 541, § 19a, 30 Stat. 551 [U. S. Comp. St. 1901, p. 3429], operated as a waiver of her statutory right to a trial by jury.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, § 140.]

4. SAME—ISSUES—SUBMISSION TO JURY—ADVISORY VERDICT.

The submission of issues of fact to a jury in an involuntary bankruptcy proceeding, independent of Bankr. Act July 1, 1898, c. 541, § 19a, 30 Stat. 551 [U. S. Comp. St. 1901, p. 3429], is within the discretion of the judge of the bankruptcy court, and the verdict returned is wholly advisory.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, § 140.]

5. SAME—APPEAL—EXCEPTIONS, BILLS OF.

Where issues in a bankruptcy proceeding were submitted to a jury independent of Bankr. Act July 1, 1898, c. 541, § 19a, 30 Stat. 551 [U. S. Comp. St. 1901, p. 3429], the verdict being merely advisory, a bill of exceptions was of no value, except on motion for a new trial.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, § 918.]

6. SAME—APPEAL.

An appeal from a judgment adjudicating appellant an involuntary bankrupt is on "appeal as in equity cases," as provided by Bankr. Act July 1, 1898, c. 541, § 25, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432].

7. SAME—APPEAL—SCOPE—FEIGNED ISSUES—ERRORS.

An appeal from an adjudication in involuntary bankruptcy, as in equity cases, brings up the whole case, and cannot be made to turn on errors in rulings made on the trial of a feigned issue.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, § 929.]

8. PARTNERSHIP—MEMBERSHIP IN FIRM—EVIDENCE.

Where a person had signed articles of copartnership, accepted the issue of shares transferable by consent of the company, and participated in profits, she was liable as a partner as to third persons.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Partnership, §§ 30, 35.]

Appeal from the District Court of the United States for the Western District of Michigan, in Bankruptcy.

Upon an involuntary petition filed against her and a number of others, alleged to be copartners under the firm name of "Vicksburg Exchange Bank, Neasmith, Bair, Page & Co.," Mrs. Eva A. Neasmith was adjudged a bankrupt. From this adjudication she has appealed and assigned error. Each of the defendants, other than appellant, filed answers denying the essential averments of the petition, including solvency of the alleged corporation and of the alleged copartners individually, as well as any act of bankruptcy by the said copartnership, or of the individual defendants. Each of the defendants, other than appellant, called for a jury to try such issues as were triable by a jury under section 19a of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 551 [U. S. Comp. St. 1901, p. 3429]). The appellant, Mrs. Eva A. Neasmith, filed a separate answer, in which she denied her insolvency, or

147 F.—11

that she had committted any act of bankruptcy, and denied that she had been a member of the banking copartnership. She did not, however, demand a jury, as had the other defendants, though they, too, had denied membership in the said firm. All of the defendants entered into certain stipulations as to facts. Among the admissions so made was this: that the said copartnership, however composed, was in fact insolvent at date of filing of the petition, and that it had committed the acts of bankruptcy alleged. As none of the defendants have appealed except Mrs. Neasmith, the transcript has been limited to such parts of the proceedings below and to so much of the evidence as bears upon the judgment affecting her. The stipulation referred to left open no questions affecting the appellant, except that of her membership in the alleged banking copartnership and her solvency. The record shows that a jury was sworn; that they heard testimony; that so far as appellant is concerned the court told the jury to say specifically whether on June 23, 1905, Mrs. Eva A. Neasmith was a member of the alleged banking copartnership, and, if she was, to say whether she was insolvent when the petition was filed. To both questions the jury answered in the affirmative. The testimony so far as it affects appellant, the rulings upon questions of evidence made upon the jury trial, the charge of the court and exceptions reserved, the proceedings upon a motion for a new trial, including certain affidavits, have all been made a part of this transcript by stipulation of counsel.

A. J. Mills, for appellant.
Dallas Bondeman, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

After making the foregoing statement, LURTON, Circuit Judge, delivered the opinion of the court.

Under section 19a of the bankrupt act of 1898 appellant had a right to demand a jury for the trial of the question of her insolvency, as well as the question of any act of bankruptcy alleged. But she did not file a written application for a jury trial within the time for the filing of her answer, nor at any other time. That she filed one stipulation in respect to certain facts which recites that it was to be used before the jury is true; and it is also true that she does not appear to have objected to the calling of a jury, or to the submission of either of the issues made by her answer to the jury. That she endeavored to have the judge instruct the jury to find the question of her membership in the alleged banking copartnership in her favor is true. But this request for an instruction in her favor was not because the questions were not such as might go to a jury, under section 19a, nor because she had not applied for a jury, but, because she was of opinion that there was no conflict in the facts which bore upon the issues made by her answer. In every way that she could, except by a specific application, she seems to have essented to the submission, not only of the issues properly for a jury under section 19a, but of the question of her membership in the firm styled "Vicksburg Exchange Bank," etc.

A trial by a jury under section 19a is a trial according to the ordinary course of a common-law jury trial, and if error is committed it can only be remedied by a new trial, or reversed by this court upon a writ of error as from the judgment of a common-law court. In Elliott v. Toeppner, 187 U. S. 327, 334, 23 Sup. Ct. 133, 47 L. Ed. 200, it was expressly decided that facts determined by a jury under

section 19a could not be examined by an appeal, as in equity cases, but only upon a writ of error, and according to the rules of the common law. It follows, therefore, that so far as errors have been assigned upon instructions given or refused, we are without jurisdiction under an appeal such as this. Bower v. Holzworth (C. C. A.) 138 Fed. 28. But appellants say that the verdict of the jury must be regarded as purely advisory, inasmuch as the failure of the appellant to apply for a jury within the time when her answer might be filed was a waiver of the right to a jury at all, and that for this reason the jury should be regarded as one called by the judge for his own assistance.

Again, it is said that the question as to whether Mrs. Neasmith was a member of the copartnership in question was not a question which should go to the jury under section 19a. Considered apart, this is true. But the question of solvency or insolvency hinged only upon her membership in that firm. This was conceded below and is conceded by stipulation here. The question of solvency or insolvency involved the amount of appellant's liabilities, as well as the amount of her assets, and the question of liability turned upon the question of her being a copartner in the alleged banking firm. That her answer and the issues submitted to the jury by the court split the question of solvency into two parts, the first being her membership in the copartnership, does not make that issue one distinct from the larger question of solvency.

But did the failure of appellant to formally apply for a jury in writing at or before the time when an answer was required operate as a waiver of the statutory right to a jury conferred by section 19a? We are inclined to hold that such was the effect of her failure to apply for a jury in the manner and within the time prescribed by that provision of the bankrupt act. The case of Oil Well Supply Co. v. Hall, 128 Fed. 875, 63 C. C. A. 343, decided by the Court of Appeals for the Fourth Circuit, is very clearly in point. If the case was not one submitted to the jury under the provisions of section 19a, the verdict would be wholly advisory, as in the case of a jury called to the assistance of the chancellor in a court of equity. Such a practice is not prohibited by any provision of the bankrupt act, and is quite in harmony with the equitable character of the proceedings in a bankrupt court. The submission of issues of fact to a jury was deemed within the discretion of the bankrupt judge under the act of 1867. See the observations of Justice Woods in Barton v. Barbour, 104 U. S. 126, 137, 26 L. Ed. 672. So far as the question has been considered under the present law the practice has been approved. Loveland on Bankruptcy (2d Ed.) p. 231; In re Rude (D. C.) 101 Fed. 805; Morss v. Franklin Coal Co. (D. C.) 125 Fed. 998; Oil Well Supply Co. v. Hall, 128 Fed. 875. 63 C. C. A. 343. Treating the submission of the issues under Mrs. Neasmith's answer as a discretionary submission, the verdict was not obligatory, but advisory only. A bill of exceptions upon such a trial is out of place, and, if taken, is of no value, except upon a motion for a new trial made to the court below. Johnson v. Harmon, 94 U. S. 371, 24 L. Ed. 271; Watt v. Starke, 101 U. S. 247, 25 L. Ed. 826; Wilson v. Riddle, 123

U. S. 608, 8 Sup. Ct. 255, 31 L. Ed. 280; Oil Well Supply Co. v. Hall, 128 Fed. 875, 63 C. C. A. 343.

The appeal here is on "an appeal as in equity cases," under section 25 of the bankrupt act (30 Stat. 553 [U. S. Comp. St. 1901, p. 3432]), from a judgment adjudicating the appellant a bankrupt. Such an appeal brings up the whole case and cannot be made to turn upon errors in rulings made upon the trial of a feigned issue. The court might, in its discretion, have granted a new trial; but, as it did not, we must assume that it was satisfied to decide the case the same way upon the whole of the evidence, giving to the conclusions of the jury only such weight as under all the circumstances, and its own view of the testimony in the case, it should have. An appeal from a decree based in whole or in part upon such a verdict, must be decided in the same way; and in the case of Johnson v. Harmon, where the only errors assigned were upon the rulings and charge of the court on the trial of the feigned issue, the decree was affirmed without any further investigation of the merits of the case.

Upon the question of fact submitted to the jury as to whether or not Mrs. Neasmith was a member of the copartnership styled "Vicksburg Exchange Bank, Neasmith, Bair, Page & Co.," we see no sufficient reason for disagreeing with the conclusions of the jury and of the trial judge. The copartnership was a somewhat peculiar one, savoring much of a joint-stock company. Shares of stock of the par value of $100 were issued to each of the copartners to the extent of their contribution to the capital. These shares were transferable by consent of the members, and the transferee thereby took the place of his assignee in the business. The original Neasmith of the copartnership was James M. When he died, four shares of his stock were assigned to a granddaughter, Maude Neasmith, as next of kin. Maude was a minor, and her mother, the appellant, Mrs. Eva A. Neasmith, was her guardian. The certificate was issued in the name of Maude, but was receipted for by the guardian. Mrs. Neasmith, as guardian, undertook to become a copartner as guardian, and, she, together with other heirs and representatives of the deceased member, James M. Neasmith, joined in a clause added to the original partnership articles, by which it was recited that they "subscribed the articles of association and thereby became copartners in the Vicksburg Exchange Bank, etc." Subsequently Maude died. Her mother became her administratrix. Upon settlement of the estate and the distribution of the assets, Mrs. Neasmith received this certificate of stock as next of kin of her daughter Maude, and receipted for same September 17, 1903. The certificate was never transferred to her upon the books of the company, nor did Mrs. Neasmith ever sign the partnership articles. There was evidence that after she took this certificate she received several dividends. The question of whether she became a partner was thus put to the jury by the court, which, after disposing of the case as it affected certain other of the defendants who were contesting the petition, said:

"This leaves the one question which has been argued by counsel before you, and that is whether Eva Neasmith, who was the mother of Maude Nea-

smith, a child of a son of James M. Neasmith, became a partner by the reception of those dividends and taking this stock. Now, she signed this agreement of April 2, 1897, which I have said made the others partners, they having signed it, and became partners and took the interest in this bank of their deceased father; and, they having taken it, they became partners in the enterprise, and she, at the time all the others signed the agreement, signed it also as the guardian of Maude Neasmith. Now, she was not able to make Maude Neasmith a partner in that enterprise, and afterwards the interest that Maude Neasmith had in that enterprise descended to her, and after that you are to determine whether she accepted this stock and accepted these dividends, knowing that they were dividends, from this partnership, and understanding that she was taking the place that she attempted to put Maude Neasmith in when she signed these articles, these supplemental articles of partnership. If she did, then she is a partner, and you will answer the question 'Yes.' If she did not, if she took these dividends without any intention or knowledge of receiving them from this partnership as profits and her share of the profits of that partnership, then your answer will be 'No.' "

It may, for the purpose of this case, be conceded that appellant could not involve her ward's estate in a copartnership. But quite another question is presented when we inquire whether she did not involve herself in the enterprise, having failed for want of power to involve a minor ward. See 11 A. & E. Encycl. of L. (2d Ed.) p. 974, and cases cited. Without putting the case upon this ground, the circumstance of receiving profits from the copartnership, knowing as she did the character of the company as a copartnership, knowing that she had signed as guardian the copartnership articles, with the express purpose of thereby, as guardian, becoming a copartner, is quite enough to fix the liability as a partner, in the absence of some contract by which she was to have a share of the profits upon some other consideration, such as services, property, etc. That participation in the profits of a copartnership is strong evidence of a partnership, and that it is sufficient, as to third persons, unless explained by circumstances showing a different relation, is well settled. Fechteler v. Palm Bros. & Co., 133 Fed. 462, 66 C. C. A. 336; Meehan v. Valentine, 145 U. S. 611, 619, 12 Sup. Ct. 972, 36 L. Ed. 835. It is difficult to conceive any ground upon which Mrs. Neasmith was paid a share of the profits of the business after the death of Maude, unless it was upon the ground that she was a partner.

The issuance of shares transferable by consent of the company might have misled a stranger into the idea that the business was incorporated, and furnish evidence upon the question of her intent. But appellant must be taken to have known the facts. She had signed articles of copartnership, and doubtless supposed she was a partner, as guardian, during Maude's life, and when she succeeded to Maude's interest that she had become a partner in her own right. This was the view the jury took and their conclusion is justly entitled to consideration. It was also the view adopted by the District Judge. Although the liability occurred by the assumption of the rights of a partner is out of proportion to the interest she had, it affords no reason for escaping the consequences of the relation.

The other objections seem to have no merit, and the judgment must be affirmed.