CARPENTER et al. v. CUDD et al.

(Circuit Court of Appeals, Fourth Circuit. November 4, 1909.)

No. 844.

1. **BANKRUPTCY (§ 68*)—INVOLUNTARY BANKRUPT—"WAGE-EARNER."**

   Bankr. Act July 1, 1898. c. 541, § 4, subd. "b," 30 Stat. 547 (U. S. Comp. St. 1901, p. 3423), provides that any natural person, except a wage-earner and certain others, may be adjudged an involuntary bankrupt, and section 1, subd. 27, defines a wage-earner as an individual who works for wages, salary, or hire at a compensation not exceeding $1,500 a year. *Held,* that where an alleged involuntary bankrupt nominally drew a salary of $900 a year as salary, but owned two-thirds of the stock of the corporation, and drew more than $2,000 a year preceding the institution of bankruptcy proceedings against him, and was also in the business of buying and selling real estate, his holdings outside the corporation being worth nearly $90,000, he was not a wage-earner within the exemption.

   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 68.*

   For other definitions, see Words and Phrases, vol. 8, p. 7365.

   What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank of Mattoon, Ill., v. First Nat. Bank, 42 C. C. A. 4.]

2. **BANKRUPTCY (§ 93*)—PROCEEDINGS—JURY—APPLICATION.**

   Bankr. Act July 1, 1898. c. 541, § 19, subd. "a," 30 Stat. 551 (U. S. Comp. St. 1901, p. 3429), provides that a person against whom an involuntary petition has been filed shall be entitled to a jury trial on the filing of a written application therefor at or before the time within which an answer may be filed. *Held,* that it is the province of the judge to determine all the issues in bankruptcy without the intervention of a jury, unless the alleged bankrupt makes a seasonable application for a jury trial.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 140; Dec. Dig. § 93.*]

3. **BANKRUPTCY (§ 93*)—PROCEEDINGS—ISSUES—JURY TRIAL.**

   Bankr. Act July 1, 1898, c. 541, § 18, subd. "d," 30 Stat. 551 (U. S. Comp. St. 1901, p. 3429), provides that, if a petition is contested, the judge shall determine the issues without the intervention of a jury, except where a jury trial is given by the act. Section 19, subd. "a," gives an involuntary bankrupt a right to a trial by jury on the question of his insolvency, except as otherwise provided, and as to any act of bankruptcy alleged in the petition on filing a petition before time to answer; and subdivision "c" declares that the right to submit controverted facts to the jury shall be determined and enjoyed, except as otherwise provided by the act according to the laws of the United States with reference to jury trial. *Held,* that an involuntary bankrupt is only entitled to a jury trial as of right in respect to his insolvency and any act of bankruptcy alleged against him, and that any other issue of fact involved, as whether the alleged bankrupt is a wage-earner, may in the court's discretion be submitted to a jury, but the jury's finding thereon is only advisory.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 140; Dec. Dig. § 93.*]

In Error to the District Court of the United States for the District of South Carolina, at Charleston, in Bankruptcy.

Involuntary petition by J. N. Cudd and others against W. C. Carpenter and others. From an order adjudicating Carpenter a bankrupt, he and certain former creditors bring error. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

C. P. Sanders (J. C. Otts and Sanders & De Pass, on the brief), for plaintiffs in error.

Howard B. Carlisle, for defendants in error.

Before GOFF and PRITCHARD, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge. On January 31, 1908, a petition in involuntary bankruptcy was filed by certain unsecured creditors against W. C. Carpenter in the District Court of the United States for the District of South Carolina. The petition charged that Carpenter, while insolvent, had permitted certain creditors to obtain a preference through judicial proceedings, namely, judgments, under which levies had been made and his property advertised for sale. To this petition Carpenter filed an answer denying insolvency, and certain of the judgment creditors interposed the defense that he was a wage-earner, earning less than $1,500 per annum, and therefore not subject to the provisions of the bankruptcy law.

At the conclusion of the evidence taken upon the trial of the case before court and jury, the court refused the request of the judgment creditors to instruct the jury that the bankrupt was a wage-earner within the meaning of the act of Congress, and therefore incapable of being adjudged an involuntary bankrupt, but ruled that under the facts in the case Carpenter could not be considered a wage-earner, and that the sole question for the jury to determine was whether or not he was insolvent at the time of the filing of the petition. The jury found that Carpenter was insolvent, and the court adjudged him a bankrupt.

The appeal involves two questions: (1) Whether under the circumstances of the case Carpenter was a wage-earner; and (2) whether this question should have been submitted to the jury for its determination. The evidence showed that Carpenter had been interested in a mercantile business for upwards of 20 years, first as a partner and subsequently as sole owner; that in January, 1907, one year before the bankruptcy proceeding was instituted, he converted this enterprise into a corporation under the name of the W. C. Carpenter Company, with a capital stock of $25,000, of which he retained $17,600. Small lots of stock were also sold to other persons, for the most part employés of the company. He became president of the corporation, and his salary was fixed at $900 per annum; but in addition to this sum, although no dividends were declared, he drew about $2,000 from the business during the year. According to his own testimony, he had other and more valuable interests than his holdings in this corporation. He was engaged in collecting the outstanding accounts due the firm which formerly conducted the business then incorporated—his share of which he estimated to be worth $25,000. He had a one-third interest, estimated by him to be worth more than $8,000, in a copartnership engaged in the lime business, although he was not actively engaged in the management of its affairs. He was joint owner of numerous pieces of real estate, town lots and farm lands, most of which were in or near the town of Gaffney, where the mercantile business was lo-

cated. He was the holder, with others, of options upon 385,000 acres of land in Kentucky, and from his real estate ventures he expected to realize large profits. In all Carpenter estimated his property to be worth about $106,000.

Subdivision "b" of section 4 of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423]) provides as follows:

> "Any natural person, except a wage-earner, or a person engaged chiefly in farming or the tillage of the soil, any unincorporated company, and any corporation engaged principally in manufacturing, trading, printing, publishing, mining, or mercantile pursuits, owing debts to the amount of one thousand dollars or over, may be adjudged an involuntary bankrupt upon default, or an impartial trial, and shall be subject to the provisions and entitled to the benefits of this act."

Subdivision 27 of section 1 provides that "wage-earner" shall mean:

> "An individual who works for wages, salary, or hire, at a rate of compensation not exceeding one thousand five hundred dollars per year."

It is contended by the appellants that inasmuch as the bankrupt was the president of the W. C. Carpenter Company, and as such was paid a salary of $900 per year, he was a wage-earner under the definition cited above. But every individual who is paid a salary of less than $1,500 per year is not therefore necessarily a wage-earner within the meaning of the law. A person extensively engaged in some mercantile or manufacturing business might at the same time incidentally earn a salary less than $1,500 per year in some collateral employment; or the individual owner of a large business might incorporate it, and, being entitled as the holder of a great majority of the stock to practically all of the dividends earned, might prefer that his salary as president and head of the business should be placed at a nominal figure, or at a figure less than $1,500 per year, and much less than he would expect to draw for his services in the management of the business. Manifestly Congress did not intend to exempt persons such as these from the operation of the law.

In the case at bar Carpenter was nominally drawing only $900 salary per year, but he owned two-thirds of the stock of the corporation and had such control over its affairs that he actually drew more than $2,000 additional during the year preceding the institution of bankruptcy proceedings. His own testimony justifies the conclusion that he was also in the business of buying and selling real estate. He estimated the value of his holdings outside of the W. C. Carpenter Company to be worth nearly $90,000. Under these circumstances he cannot be held to be a wage-earner in the sense of the statute, and the decision of the court upon the evidence offered upon this point was correct.

But it is urged that the court should have submitted this matter to the jury for determination. It appears from the transcript of record that at the beginning of the trial it was agreed between counsel that the question of whether the bankrupt was a wage-earner was to be taken from the jury and left with the court. Subsequently in addressing the court during the trial counsel for the appellants seem to have

assumed that all of the questions in the case were to be submitted to the jury; but there is nothing else in the record to show that the agreement entered into at the outset of the case had been abandoned. It must therefore be presumed that the appellants waived any right that they might have had to have the jury decide this issue.

Aside from this, the provisions of the bankrupt law did not entitle the bankrupt or his creditors in this case to the trial of the issue as to whether or not Carpenter was a wage-earner by a jury as a matter of right. Subsection "d," § 18, of the bankrupt act, provides as follows:

"If the bankrupt, or any of his creditors, shall appear within the time limited, and controvert the facts alleged in the petition, the judge shall determine, as soon as may be, the issues presented by the pleadings, without the intervention of a jury, except in cases where a jury trial is given by this act, and make the adjudication or dismiss the petition."

Subdivision "a" of section 19 provides:

"A person against whom an involuntary petition has been filed shall be entitled to have a trial by jury, in respect to the question of his insolvency, except as herein otherwise provided, and any act of bankruptcy alleged in such petition to have been committed, upon filing a written application therefor at or before the time within which an answer may be filed. If such application is not filed within such time, a trial by jury shall be deemed to have been waived."

Subsection "c" of section 19 provides:

"The right to submit matters in controversy, or an alleged offense under this act, to a jury shall be determined and enjoyed, except as provided by this act, according to the United States laws now in force or such as may be hereafter enacted in relation to trials by jury."

Under these provisions it is clear that it is the province of the judge to hear and determine without the intervention of a jury all issues in cases of contested bankruptcy, unless the alleged bankrupt shall make seasonable application for a jury trial, in which case he is entitled as of right to a jury trial in respect to his insolvency and any act of bankruptcy alleged to have been committed by him. Any other issue of fact involved in the question of bankruptcy, such, for instance, as that in this case, may in the discretion of the court be also submitted to the jury; but the finding of the jury upon such an issue, as in cases submitted to a jury by the chancellor in a court of chancery, is merely advisory, and not binding upon the court. Oil Well Supply Company v. Hall, 128 Fed. 875, 63 C. C. A. 343; In re Neasmith, 147 Fed. 160, 77 C. C. A. 402; Barton v. Barbour, 104 U. S. 134, 26 L. Ed. 672.

There was therefore no error in not submitting to the jury the question as to whether or not the bankrupt was a wage-earner.

Affirmed.