JED P. CLARK ET AL. *v.* HARRIET C. PECK'S EXRS. ET AL.

January Term, 1906.

Present:   ROWELL, C. J., TYLER, MUNSON, HASELTON, POWERS, and MILES, JJ.

Opinion filed November 20, 1906.

*Equity—Jurisdiction—Bill to Construe Will—No. 40, Acts 1896—Trusts—Executors—Trustee De Son Tort—Injunction—Multiplicity of Suits—Jurisdiction of Equity in Aid of Probate Court.*

The court of chancery can neither restrict nor supplant the jurisdiction of the probate court, nor supervise its action, but can intervene only in aid of that court.

Before the court of chancery will take jurisdiction under No. 40, Acts 1896, providing that "in all cases where the terms of a will are doubtful or in dispute," any interested legatee, devisee, or heir may bring a bill in chancery to have the will construed, it must appear not only that the terms of the will are doubtful or in dispute, and that the orators have the requisite interest, but also that something substantial will be accomplished by the intervention of that court.

In a suit in chancery, under No. 40, Acts 1896, for the construction of a will, brought by the legatees against the executors, the bill alleged that the dispute consists of the claim made by the orators that one of them and his family are entitled, under the will, to certain annuities beginning with the death of the testatrix, which claim is denied by one of the executors, who is the surviving hus-

band of the testatrix, and entitled under the will, as the orators claim, to only the income of the estate during his life, subject to the payment of said annuities, but who claims that, by the terms of the will, said annuities are to begin at his death, and that, if the income of the property is not sufficient for his support, he has a right to use the principal for that purpose; that said executor filed in the probate court, where the estate is in process of administration, a waiver of the provisions of the will in his favor, which waiver is illegal; that said executor is allowed by his co-executors to have the possession and control of the whole estate, which he is squandering. *Held*, on demurrer to the bill, that the court of chancery had no jurisdiction either to construe the will, to enjoin the defendants, or to appoint a receiver and administer the estate.

Since the alleged dispute as to the construction of the will is between the surviving husband and said annuitants, who claim that the waiver of the provisions of the will in his favor, made by the former in the probate court, was illegal, the settlement of the alleged dispute can be of no importance, unless that waiver was in fact illegal, a question which the court of chancery has no jurisdiction to determine.

The mere allegation in the bill that the account filed in the probate court by defendants as executors is "misleading and untrue and in fraud of the rights" of the orators, is only a conclusion of the pleader; the facts should be alleged so that the court may judge whether such conclusion is warranted.

If, as alleged in the bill, said surviving husband's co-executors have allowed him "to control, manage and appropriate to his own use, not only the entire income, but also the principal of the estate," the wrong, if any, is theirs, and they may be removed by the probate court, which has full jurisdiction of that matter.

The allegations of the bill examined and compared and *held* that it does not state in clear and unambiguous language that the surviving husband is wasting and threatening to waste the estate, but that it appears that the estate is and has been in the possession of the executors and properly managed.

If, as alleged in the bill, said surviving husband's co-executors have allowed him "to control, manage, and appropriate to his own use, not only the entire income, but also the principal of the estate," then his possession was rightful and he was not a trustee *de son tort*. *Bailey* v. *Bailey*, 67 Vt. 494, distinguished and explained.

Equity does not have jurisdiction of all trusts. It has no jurisdiction over trusts given to the exclusive jurisdiction of probate or other courts, nor of money held in trust.

It is not enough to allege that a trust is involved in order to give the court of chancery jurisdiction. It must further appear that the trust is one of which the court of chancery has either conclusive, auxiliary, or concurrent jurisdiction.

As the trust relation involved in this case is that of executor, over which the probate court has exclusive jurisdiction, the court of chancery cannot take jurisdiction on the ground that a trust is involved.

The facts that one of said annuitants is a man eighty years old, and in need of the annuity for his immediate use and support, cannot give the court of chancery jurisdiction on the ground of an inadequate remedy at law.

The evident purpose of the bill is to transfer the settlement of the estate from the probate court to the court of chancery, and no reasons are alleged why that court should take jurisdiction on the ground of preventing a multiplicity of suits, which might not be urged in every testate estate.

APPEAL IN CHANCERY, Chittenden County. Heard at Chambers, November 3, 1905, on demurrer to the bill, *Watson,* Chancellor. Demurrer sustained, and bill adjudged insufficient and dismissed. The orators appealed. The opinion states the material allegations of the bill.

*Palmer & Foster* and *B. F. Fifield* for the orators.

The fact that Mr. Peck, the surviving husband, has taken actual possession of the property, and taken and received all that he is entitled to under the will, and used the income and some of the principal for his own support, constitute an election on his part to take under the will; and an election once made is binding. *Hutchinson* v. *McNutt,* 1 Ohio 14; *Wright* v. *Thomas,* 26 Ohio 346; *Mattocks* v. *Young,* 66 Me. 459; *Drake* v. *Wild,* 70 Vt. 52; *Meach* v. *Meach,* 37 Vt. 414; *Hatha-*

*way* v. *Hathaway,* 46 Vt. 234; *Allen* v. *Knowlton,* 47 Vt. 512; *Childs* v. *Stoddard,* 130 Mass. 110; *Brown* v. *Cass,* 4 Wall. 362; *Hartland* v. *Hackett,* 57 Vt. 92; *Re Blackmier's Est.,* 66 Vt. 46; *White* v. *White,* 68 Vt. 161.

*Hunton & Stickney* for the defendants.

The probate court must first be resorted to in all matters pertaining to the settlement of estates; and chancery has no jurisdiction in such matters except in aid of that court. *Missionary Society* v. *Eells,* 68 Vt. 497; *Ward et ux.* v. *Church,* 60 Vt. 490; *Blair* v. *Johnson,* 64 Vt. 598; *Wiley* v. *Brainerd,* 11 Vt. 107; *Boyden* v. *Admx. of Ward & Tr.,* 38 Vt. 628; *Kimball* v. *Kimball,* 19 Vt. 580.

If Mr. Peck is wrongfully in possession of the property, the legal title thereof is in the executors, and they have full power to acquire its possession. *Roys* v. *Roys,* 13 Vt. 543; *Manwell* v. *Briggs,* 17 Vt. 176; *Perrin* v. *Granger;* 33 Vt. 101.

MILES, J. This is a suit in chancery. The question before this Court is raised by demurrer to the bill, and the ground of the demurrer is, that the court of chancery has no jurisdiction.

The allegations of the bill, briefly stated, are as follows: that Harriet C. Peck of Burlington, Vt., died on or about December 25, 1903, leaving a husband, the defendant, Edward W. Peck, but no children surviving her; that she also left a will which was duly proved, allowed and established in the probate court for the district of Chittenden, on the first day of February, 1904, and letters testamentary thereon issued unto Gardner S. Wainwright and Sayles Nichols, nominated in the will as executors thereof, who accepted the appointment, filed a bond thereunder and duly qualified as required by law; that

Jed P. Clark, one of the orators, at the date of the death of Harriet C., was poor and without means of support and a recipient from her of an allowance of fifty dollars per month paid to him regularly; that Edward W., at the time of the death of Harriet C., was wholly without property of his own; that since her death Edward W., as the plaintiffs believe, has used and was still using at the time the bill was brought, to wit, January 4, 1905, large sums of the principal of her estate; that she died owning real and personal property worth two hundred thousand dollars; that this property is now in the possession of Edward W. who intends to keep the same, as the plaintiffs believe, and use it for his own personal benefit and to sell and transfer the notes, stocks and bonds belonging to this estate as he sees fit; that some of the specific provisions of this will are as follows:

"I give to my beloved husband, Edward W. Peck, the possession, management, use, control and income of all my estate, real and personal, during his natural life, subject to the payment of the annuities hereinafter provided."·

"It is my will that the annuities now paid and given by me be continued after my decease, out of my estate, and payable in the same manner, and I hereby give the same as follows: To Joseph E. Clark, Dora A. Odlin, William H. Clark and Helen A. Clark, children of my brother, Jed P. Clark, I give an annuity of three hundred dollars each, to be paid to each in quarterly instalments during their respective lives," etc.

"And in case of the death of any of said annuitants leaving issue, it is my will that the annuity theretofore paid to such deceased person, be paid to such issue during life, but in case of such death without issue, then the annuity theretofore paid to such person, shall be continued and paid in equal parts to the survivor or survivors of them. It is my will that the

residue of my property not herein otherwise disposed of, including the residue as it will be after the termination of such annuities, be divided into three equal parts, two parts to be placed in the hands of my executors as trustees to be by them held, managed and controlled and the net income thereof to be paid as follows: Six hundred dollars thereof annually in monthly instalments to my brother Jed P. Clark during his natural life, the balance of the income of said two parts shall be by said trustees applied to the support, care and maintenance of the family of my said brother and this shall be so done by said trustees that said family shall derive the direct and whole benefit thereof."

The bill further alleges, in substance, that Edward W. claims by virtue of the provisions of the will, that he has the right not only to the use of the entire property during his life time, but that, in case the income from that property is not sufficient for his support, he has the right to use the principal, or a part of it, for that purpose; that the executors, Wainwright and Nichols, refuse and neglect to take possession of the estate, and permit Edward W. to control, manage and appropriate the same to his own use, as the plaintiffs believe, and to waste and squander the same to the irreparable loss to the plaintiffs, and that said Wainwright and Nichols are conspiring with Edward W., that he may appropriate to his own use so much of the estate as he may choose to use for his own personal benefit; that Wainwright and Nichols refuse farther to proceed with their duties as executors and assert that Edward W. has the right under and by virtue of the will to manage and control said property; that the only bond filed by Wainwright and Nichols is for the sum of two thousand dollars and is so drawn that no liability whatever attaches by virtue thereof; that Edward W. has made a distribution of certain

portions of the estate and has also given away a part and that
after such acts, distribution and gifts, on December 12, 1904,
he filed in the probate court his waiver of the provisions of the
will and asserts his right to such portion of the estate as by
law he is entitled to receive; that Edward W. before filing his
waiver, to wit, on the 23rd day of September, 1904, filed in
the probate court his petition for an extension of time in which
he might waive the provisions of the will and take his statu-
tory rights; that notice thereof was not given to all the parties
interested, but was given to one of the plaintiffs, William
Odlin, who appeared and objected to the extension of time as
prayed for, but such extension was granted, to which said
Odlin prayed for an appeal, but the same was refused on the
ground that the action of the probate court in matters of that
kind was not subject to appeal. The extension of time was
made within the eight months prescribed by law in which the
husband or wife may waive the provisions of the other's will
and the waiver was within the time fixed by the probate court,
in which Edward W. was allowed to make his election.

The bill further alleges that Edward W. Peck by his acts
and claims made respecting the will, had debarred himself from
waiving such will; that he has ever refused to turn over to
Wainwright and Nichols any of the property belonging to the
estate; that, on the 4th day of February, 1905, Wainwright and
Nichols filed in the probate court their accounts and inventory,
in which they charged themselves with certain property of the
estate, specifically itemized, amounting to one hundred and
fifty-five thousand four hundred and thirty-three dollars and
twenty cents, and with receipts of property coming to them
from various sources, and crediting themselves with property
on hand at that date and money paid out in the management
and control of this estate, in all amounting to one hundred and

fifty-five thousand four hundred and forty-eight dollars and twenty cents; that the account also showed an itemized statement of the income of the estate since the decease of Harriet C. to the 4th day of February, 1905, amounting to seven thousand and twenty-nine dollars; that the account contained an itemized statement of the money paid on annuities, and advanced to Edward W. and paid out on general expenses by the executors, from the date of their appointment to the 4th day of February, 1905.

The bill contains no statement that the estate consisted of any property, except what is included in the inventory amounting to one hundred and fifty-five thousand four hundred and thirty-three dollars and twenty cents, except the allegations of the plaintiffs above stated, made on information and belief, that Harriet C. died owning property exceeding the value of two hundred thousand dollars.    Said bill prayed:

1.    For an injunction against the use of any part of the principal of said estate and the change of any place of deposit of books, papers or choses in action.

2.    For an accounting of all the assets of said estate.

3.    For a receiver to collect and take possession of all the assets of said estate.

4.    For an injunction restraining said Edward W. and said executors from having anything to do concerning said estate, or any of its assets.

5.    For an appointment of a trustee to take the place of the one named in the will.

6.    For an order to compel all persons acting in a fiduciary capacity under the will to give bonds.

7.    For a construction of the will.

8. For an injunction against the probate court, to restrain it from taking any action on the waiver of said will by said Edward W.

9. For an injunction against said Edward W. restraining him from prosecuting his said waiver of said will.

10. For an accounting by said Edward W. of all the estate committed by the testatrix to his possession, control, use and management.

11. For general relief.

The orators contend that the court of chancery has jurisdiction of the matters set up in the bill, for several reasons:

First: Because the terms of the will, as shown by the portion thereof above quoted, are in dispute and because the orators are interested in the estate as legatees. They base this contention upon No. 40 of the Vermont Session Laws of 1896, sec. 1, which reads as follows: "In all cases where the terms of a will are doubtful, or in dispute, any person interested in the estate, either as legatee, devisee or heir at law, may bring a bill in chancery to have the will construed, and the court of chancery or the Supreme Court on appeal shall proceed to construe the will, which decision shall be binding upon the parties who are served with process and who appear in the case by counsel, notwithstanding it appears that others may at some future time become interested under the will." They urge that the dispute as to the terms of the will consists in a claim made by orators that Jed P. Clark and family are entitled to an annuity commencing with the decease of Harriet C., which they allege is denied by Edward W. who claims that said Jed P. Clark is not entitled to his annuity until the death of Edward W.

The statute above quoted, undoubtedly, was enacted for the purpose of serving some material and substantial end in the

settlement of a testator's estate. Such being its object, in order to give the court of chancery jurisdiction, it must appear, that in addition to the fact that the terms of the will are in dispute, and that the parties seeking to have the construction made are interested as legatees, devisees or heirs at law, that some substantial end will be accomplished by the court of chancery in construing the will. Does such result appear to necessarily follow a construction of this will, from any allegation in the bill before us? The dispute respecting the construction of the will, if one exists, is between the orators and the defendant, Edward W., and if its settlement is important, it is because Edward W. claims adversely to Jed P. and his family; and, if he claims adversely to Jed P. and his family, it is because he claims under the provisions of the will. To determine this, it is necessary to settle the question of whether Edward W. claims under the provisions of the will or under the law, independent of the will; for if he claims under the law, and not under the will, then there is no dispute existing between him and Jed P. and family, and whatever he may claim with respect to the provisions of the will, is but a mere expression of opinion by a disinterested party who is in no way affected by any provision in the will. Therefore, before the court of chancery can determine whether there is such dispute with reference to the terms of the will, as contemplated in the above section, it must settle the question of whether Edward W. has or has not legally waived the provisions of the will. The question then arises, has the court of chancery jurisdiction of *that* question? If the court of chancery has jurisdiction of *that* question, then it has jurisdiction of such a question whenever it arises in the settlement of a testator's estate.

No authorities have been cited by the orators showing such jurisdiction in the court of chancery, and we think none can

be, found.  Possibly, if that question had been settled in the probate court and it had been found there, that Edward W. had not legally waived the provisions of the will, but had elected to take under it, that this court might have jurisdiction to construe the will, which we do not decide; but, in order to entitle the orators to the aid of the court of chancery, they must have proceeded far enough in the law court to have disclosed to the court of chancery the necessity for its aid.  *Blair* v. *Johnson,* 64 Vt. 598; *Morse* v. *Lyman,* 64 Vt. 167; *Harris* v. *Harris,* 79 Vt. 22.

From the bill it appears that the probate court has passed upon the right of Edward W. to waive the provisions of the will so far as they relate to him, and has extended the time in which he could exercise that right, and that the right has been exercised by him within that time.  The orators argue that the court of chancery has jurisdiction on account of this action of the probate court upon this matter, and assign as a reason for such jurisdiction, that the probate court had no right to grant the extension of time in which to make the election, and that the election must have been made within twenty days from the probate of the will, and because the orator, Odlin, who appeared and objected to the extension and prayed for an appeal from that decision of the probate court was unjustly denied such appeal.

If the orators have been denied their right of appeal, their remedy is not by application to the court of chancery.  The Vermont Statutes, sec. 1665, have provided a remedy for such a case, a remedy which is ample and complete.  To hold with the orator's contention, would give to the court of chancery a revisory power over the action of the probate court, a conclusion wholly at variance with the settled holdings of this Court.  If the probate court has committed any error respect-

ing any of these matters, with reference to which we have not examined, no reason is shown by the bill why those questions cannot be brought to this Court in regular manner through the county court. The probate court having passed upon the right of Edward W. to elect whether he would or would not waive the provisions of the will, the court of chancery has no jurisdiction to revise that decree. *Wood* v. *Church,* 66 Vt. 490. When all these questions are settled in the proper man- ner, if it is found that Edward W. has or has not elected to take under the will, and it becomes necessary to construe the will, there will be ample time in which to resort to the court of chancery for a construction of its terms, if a case arises wherein the court of chancery has jurisdiction under the statute.

As it does not clearly appear from the allegations in the bill that there is a dispute between the orators and Edward W. which is essential to the settlement of the estate, we hold, that the court of chancery has no jurisdiction upon this ground. For a further discussion respecting the scope and construction of No. 40, of the Acts of 1896, see *Harris* v. *Harris, supra.*

Second: The orators contend that the court of chancery has jurisdiction, because an injunction is necessary to prevent irreparable loss and injury. This contention rests upon the allegations in the bill, to which resort must be had to determine whether the court of chancery has jurisdiction for that purpose.

The right of the court of chancery to interfere by injunction, in a case where the probate court has not adequate power to give full and complete relief, cannot be disputed; but it must appear from the bill that such interference is necessary, before chancery can give its aid. The court of chancery cannot exercise any supervisory jurisdiction nor restrict or supplant the jurisdiction of the probate court. It must act, if at all, in

aid of that court. *Merriam* v. *Hemenway,* 26 Vt. 565; *Boyden* v. *Ward,* 38 Vt. 628; *Adams* v. *Adams,* 22 Vt. 50; *Wood* v. *Church, supra.* The question then arises, do the allegations of this bill show a necessity for the interference of a court of chancery and the exercise of its powers to grant an injunction?

The bill clearly shows that the only object in securing the injunction, is to restrain Edward W. from disposing of any of said estate and from destroying any of the books, papers, vouchers or memoranda of any kind relative to said estate.

If the bill clearly showed that there was danger that Edward W. was about to use the estate or was destroying or threatening to destroy any books, papers, vouchers or memoranda of the estate to the irreparable injury thereof, and that the probate court had no jurisdiction to prevent it, possibly, the court of chancery might grant an injunction in aid of such court; but we are not called upon to decide that question, for when we look into the allegations of the bill we do not think that it discloses any such danger. On information and belief it is alleged, that Edward W., at the date of the bill and from the death of Harriet C., had the possession of the estate and was using and squandering the same; but later allegations contradict this statement and there is no allegation that he was about to destroy or remove the books, papers, vouchers or memoranda of the estate beyond the reach of the probate court.

This allegation, on information and belief must be construed with the positive allegation, in another part of the bill, wherein it is alleged that the executors, defendants Wainwright and Nichols, have filed their account in the probate court for the district of Chittenden, in which account they charge themselves with the entire estate, as above stated, showing the income of the estate and the receipts thereof for the

year preceding the settlement and covering the time interven-
ing between their appointment and the date of the settlement,
and their disbursements on account of the management of the
estate for that period of time, including the amount advanced
to Edward W. during that time, being in all advanced to him
only the sum of two thousand four hundred and ten dollars
and nineteen cents.   While the bill contains an allegation that
the settlement was made to aid Edward W. and in collusion
with him, it does not appear wherein it aids him or in what
respect it is collusive, and no allegation is made in the bill that
it does not disclose all the estate or is in any respect inaccurate,
and no appeal is alleged to have been taken to that settlement.

Now, this positive allegation, setting out the account of
Wainwright and Nichols, in which it appears that they have
had the possession, management and control of the estate of
Harriet C., instead of Edward W., from the time letters of ad-
ministration were granted to them, until they filed their ac-
count, and had delivered to Edward W. only the sum of
$2410.19 during that time, substantially cancels the allegation
made on information and belief, that Edward W. was in the
possession of the estate and was wasting the same.   This
effect is not prevented by the statement in the bill, that the
account is "misleading and untrue and in fraud of the rights"
of the petitioners.   Such statement is only a conclusion from
facts not stated.   The bill does not show wherein it is "mis-
leading and untrue and in fraud of the rights" of the peti-
tioners.   The account stated moreover bears upon the face of
it, the appearance of a straightforward, true and just account,
and discloses the possession and management of the estate to
have been that of the executors, Wainwright and Nichols.   If,
however, the actual management and possession of such estate
is and had been in Edward W. since the granting of letters

testamentary to the executors, the allegation on information
and belief contained in the plaintiff's bill, that Wainwright
and Nichols "have at all times permitted Edward W. Peck
to control, manage and appropriate to his own use, not only
the entire income, but also the principal of the estate," clearly
confers upon Edward W. a legal right to the possession and,
if the estate is being misappropriated, it is because the execu-
tors are permitting it to be done, and the wrong, if any, is
theirs; because what is being done by Edward W. with their
consent and permission, in law, is being done by them, who are
charged with the due and proper settlement of that estate;
and, if they neglect faithfully to perform their duty in this
respect they may be removed by the probate court, who may
appoint a successor who will perform those duties, sec. 2384
and 2380 V. S.    From anything that appears in the bill, all
that could be accomplished by injunction, can be accomplished
by the executors withdrawing their permission to Edward's
possession and use of the estate, and taking possession thereof;
and, if they refuse to do so, and such action is necessary for
its due administration a full and ample remedy is possessed
by the probate court who can remove them and appoint others
who will, and thus correct the wrong, if any exists, in a much
speedier and simpler manner than by bill of injunction.    We,
however, do not think in view of the positive allegation in the
bill, setting out said executor's account as above stated, that
the bill states a case in clear, positive and unambiguous lan-
guage, showing that Edward W. has the possession of the
estate and is wasting or threatening to waste the same; but
we think it rather appears, that the possession is and has been
in the executors all the time and that it has been and is
being properly managed, as shown by their account set out in

19

the bill.    From the foregoing reasons, it follows, that the court
of chancery has not jurisdiction under the allegations in this
bill to grant the injunction prayed for.

Third: The orators further contend, that the court of
chancery has jurisdiction, because a constructive trust is to be
enforced and a trustee *de son tort* compelled to account.    A
full answer to this contention is, that the bill does not show
in clear terms that Edward W. was a trustee even, much less
a trustee *de son tort;* for, as already stated, his possession, if
he had any, was rightful and with the permission of those
having the legal right to such possession.    Being rightful he
was not a trustee *de son tort.    Bailey* v. *Bailey,* 67 Vt. 494.
The plaintiffs rely principally, if not solely, upon this case of
*Bailey* v. *Bailey,* as sustaining their contention upon this point.
That case is clearly distinguishable from the case at bar.    In
that case the object sought was to have a son and widow ac-
count in chancery for the management of the property of the
insane father and husband, for a period of twenty or more
years before his death.    There was no question but that the
defendants in that case had the possession of the property for
that length of time and·that that possession was without legal
right.    The widow was the administratrix of her husband's
estate and the son had presented a claim against· that estate,
which was allowed by the commissioners and an appeal taken
in the name of the administratrix, by one of the heirs, who,
with other heirs, brought that chancery proceeding pending the
appeal.    The question there as here, was as to the jurisdiction
of the court of chancery.    The decision was by a divided court
which held, that the son and widow were guardians or trustees
*de son tort* of the insane father during his life time; and the
greater part of the opinion is devoted to the discussion of that
question.    That case further held, that being guardians or

trustees *de son tort,* the probate court had no power to cite
them before it to settle their accounts, and, therefore, the aid
of the court of chancery might well be invoked.    In that case
the trust relation had been maintained without the semblance
of right for a period of twenty or more years, and had termin-
ated before the probate court had taken jurisdiction of the set-
tlement of the estate, and during the continuance of that rela-
tion, there was no legal representative to take note of what
was being done, or to keep any account of the transactions of
the self-constituted guardians.    Such guardians had the sole
information from which an account could be made.    Had the
insane person recovered his reason before his death, he could,
under the doctrine disclosed in the cases cited in the opinion of
that case, have maintained a bill in chancery for a discovery
and to account.    His representative succeeded to all the rights
which he had in his life time.    The cause was complete before
the settlement of the estate became pending in the probate
court and did not grow out of that settlement.    It was simply
a chose in action belonging to the estate, which could be en-
forced in any proper tribunal.    In the case at bar, the matter
of complaint arose after the settlement of the estate became
pending in the probate court and is a part and grew out of the
management of that estate in the course of its settlement; and
during the transactions constituting that matter, there have
been representatives of said estate having full knowledge of
what has been taking place with reference to said estate, and
who have kept full, specific and complete account of all matters
relating to the management, control and disposal of the prop-
erty of the estate, and what Edward W. has done, if anything,
having been done with the permission of the executors, must,
of necessity, be a part of the account of the executors, of which
the probate court has exclusive jurisdiction, and besides, the

possession of Edward W., if any he had, was rightful. It therefore is apparent, that the case of *Bailey* v. *Bailey, supra,* so different in all its essentials, is not authority for the claim made by the orators.

The orators strenuously urge upon us that the relation of Edward W. to the estate of his wife, Harriet C., is that of a trustee, and that courts of equity have original jurisdiction of trusts and because of that it has jurisdiction of the case at bar. That courts of equity do have original jurisdiction of some trusts is undoubtedly true; but it does not follow from that that such court has jurisdiction of all trusts. Such as are given to other courts form an exception; and among those, are. trusts exclusively given to the jurisdiction of the probate court. Money held in trust is another exception. *Downs* v. *Downs,* 75 Vt. 383, and cases cited in the opinion. Other instances might be cited, but the above is sufficient to show that it is not enough to allege that a trust is involved in order to give the court of chancery jurisdiction. It must further appear that the trust is either one of which the court of chancery has exclusive, auxiliary or concurrent jurisdiction. As the trust relation in the case at bar is that of an executor over which jurisdiction is exclusively given to the probate court, it follows, that the court of chancery has not jurisdiction on the ground that a trust is involved.

Fourth: The orators contend that a court of chancery has jurisdiction, because they have no adequate legal remedy. They say this is so, because the plaintiff, Jed P. Clark, is an old man eighty years old, and in need of the annuity for his immediate use and support. It is needless for this Court to call attention to the fact that the court of chancery is not a law making body, but is bound to follow the law as it finds it, to the same extent that courts of law are required to follow it,

and therefore it can consider the rights of one person in no different light than those of another, whatever the age and condition of that person, and the jurisdiction of the court of chancery rests upon no such uncertain grounds; but they say, the court of chancery has jurisdiction to call Edward W. to account and the probate court has not that power, because he is a trustee *de son tort.* This contention is practically answered in what we have said in the earlier part of this opinion, viz.: that the bill does not show that Edward W. is the wrong doer, but the wrong, if any, is that of the executors who are subject to the order of the probate court whose jurisdiction is ample, speedy and less expensive than that of the court of chancery. *Boyden* v. *Wood,* 38 Vt. 628. This position is clearly insufficient to give jurisdiction to the court of chancery in the case at bar:

Fifth: The orators claim that the court of chancery has jurisdiction to prevent Edward W. from electing to waive the will and from contesting that question in the probate court. It is a sufficient answer to this claim, that the bill shows no equitable ground or reason why the court of chancery should attempt to interfere, by restraining order or otherwise, in a matter over which the probate court has full jurisdiction and of which it has power to give an ample remedy, and in which the bill shows, it has acted.

Sixth: The orators further claim that the court of chancery has jurisdiction because a conspiracy exists between the executors and Edward W. to rob the estate. A full answer to this claim is shown in what we have said in the earlier part of this opinion with reference to calling the executors to account, removing them and the appointment of others in their stead.

Seventh: The last ground urged by the orators upon which they claim jurisdiction for the court of chancery, is, that it will prevent a multiplicity of suits. This point is not well taken. There are no special reasons alleged why the court of chancery has jurisdiction in this case, on the ground of preventing a multiplicity of suits, which might not be urged in every testate estate.

The evident purpose of the bill is to transfer the settlement of this estate from the probate court to the court of chancery. This could not be done without overruling a long line of authorities and a well settled practice in this State. The court of chancery can only exercise its functions in proper cases in regard to probate matters. It can only aid that court, and merely furnishes auxiliary powers when the functions of the probate court are inadequate. *Adams* v. *Adams,* 22 Vt. 50; *Merriam* v. *Hemenway,* 26 Vt. 565; *Boyden* v. *Wood,* 38 Vt. 628; *Blair* v. *Johnson,* 64 Vt. 598; *Missionary Society* v. *Eells,* 68 Vt. 497. For further discussion upon this point see *Harris* v. *Harris, supra.*

*Decree affirmed as of January Term, 1906, and cause remanded with mandate to enter a decree according to mandate as of March Term, 1906, with costs in this Court.*