Hon. JONATHAN ROSS,  
Hon. H. HENRY POWERS, } Assistant Judges.  
Hon. RUSSELL S. TAFT,

---

IN THE MATTER OF THE ESTATE OF ALANSON E. WEATHER-HEAD: MARY WEATHERHEAD'S APPEAL.

*Appeal from the Probate. Court. Executor. Trustee. Jury Trial. Accounting.*

1. When the account of executors and trustees has been presented to, and allowed by the Probate Court, and an appeal taken to the County Court, and it *being merely a question of accounting*, there is *no issue "proper for the cognizance of a jury"*; and the court decided correctly in appointing a commissioner to take the account.
2. Gen. Sts. c. 48, s. 34 (R. L. s. 2279); Gen. Sts. c. 53, s. 23, appeal from Probate to the County Court, a jury trial, construed.

CASE heard at the March Term, 1880, VEAZEY, J., presiding. The court appointed a commissioner to take the account. The case appears in the opinion of the court.

*A. Stoddard*, for the plaintiff.

*Davenport & Eddy*, for the defendant.

The opinion of the court was delivered by

TAFT, J.    Alanson E. Weatherhead died in 1862, testate.   He bequeathed his estate to the appellees, and one Howe, since deceased, in trust, for the use of the appellant.   The appellees and said Howe were appointed, and gave a bond as, executors, on the 31st day of May, 1862 ; they filed an account in the Probate Court on the 25th day of June 1864, which was allowed.   On the 29th day of November, 1873, styling themselves executors and trustees, they filed in court, an account showing a balance in their hands of $7332.61, and the Probate Court ordered that said sum " remain in the hands and custody of the said trustees'to be managed and disposed of according to the provisions of said last will and testament."   In the same character, on the 28th day of April, 1877, they filed a like account of their transactions.   On the 6th day of May, 1878, the appellees surviving said Howe, gave a bond to the Probate Court as executors and trustees.   On the 22d day of April, 1879, the appellees presented an account of their transactions as executors and trustees, which was allowed by the Probate Court ; from such an allowance an appeal to the County Court was taken, and in that court a commissioner was appointed to take the account.   The appellees objected to the appointment of a commissioner, claiming a trial by jury as matter of right, and the case comes to this court for revision before final judgment.   In support of their claim they cite the twelfth article of our bill of rights, which declares : " that when any issue of fact proper for the cognizance of a jury, is joined in a court of law, the parties have a right to trial by jury, which ought to be held sacred " ; and section thirty-one of the constitution : " Trials of issues, proper for the cognizance of a jury, in the Supreme or County Courts, shall be by jury except when parties otherwise agree."   These provisions were in the constitution adopted in 1786, and have remained in force ever since ; and the question presented is, whether the mode of trial ordered by the court below

is in conflict with them. The construction which has been given by the courts to these constitutional provisions, has been, that they apply to those cases only where issues were joined and were proper for the cognizance of a jury, according to the course of the common law. They have direct reference to the usages and practice of the common-law courts, and none whatever to courts of equity, admiralty or probate, which strictly speaking are not common-law courts, their jurisdiction and practice being derived from the civil or canon law where no jury trials intervene. These provisions have no application to Probate Courts and proceedings in relation to the settlement of estates. By the customs of England such matters were of ecclesiastical conusance, and the proceedings according to ecclesiastical law, "the sentence of which courts," says BACON, "shall be presumed just and agreeable to such law, though contrary to the rule and reason of the common law." *Bac. Ab. Title " Of the Ecclesiastical Courts (D")*. "The two grand descriptions of causes which seemed more indisputably than any others within ecclesiastial cognizance, were matrimonial and *testamentary*, and their incidents under testamentary were included last wills, codicils, legacies, administration, &c." 4 Reeve's Hist. of Eng. Law, 98.

The first constitution, adopted in 1777, provided : " that in controversies respecting property, and in suits between man and man, the parties have a right to a trial by jury, which ought to be held sacred "; and that, " trials shall be by jury." These were broad provisions. They applied to all courts, and covered every case respecting property and suit between man and man. What the practice may have been in those early days under such provisions, we are not aware ; but if strictly followed, and trials by jury granted in all matters of equity, in probate controversies, and in the action of account at common law, it is not surprising that at the first opportunity the change was made which restricted the right of a jury trial to those causes proper for the cognizance of a jury. Although the County Court has appellate jurisdiction in probate matters, we do not think that the proceedings therein in that court are subject to the constitutional restrictions as to jury trial ; for in those matters such trials are not according to

the usages and practice of the common law. The statute passed in the year following the adoption of the constitution of 1786, relating to the settlement of estates, provided for appeals from any order, sentence, or decree of the Probate Court. There was no provision in the act as to the proceedings after appeal, save the right given the executor or administrator to " contest the proof of any debt at common law," from which it is plainly inferrable that it was then regarded that such matters were not within the jurisdiction of common-law courts.

Our present statute relating to proceedings after appeal provides that the : " court shall proceed to trial and determination of the question according to the rules of law, and if there shall be any question of fact to be decided, issue may be joined thereon, under the direction of the court, and a trial thereof had by jury." Gen. Sts. c. 48, s. 34. We think that it is by force of this statute, and a similar one c. 53, s. 23, " allowing a trial by jury of all questions of fact, in cases where such trial may be proper," in cases relating to appeals from the decisions of commissioners for the adjustment of claims against estates, that a jury trial is allowed in any cause pending in the appellate court, and not by reason of any rights thereto secured by the constitution. The matters in controversy in this case appertain to a trust estate, and of such affairs, courts of equity had, formerly, exclusive control. But were this a matter exclusively of common-law jurisdiction, there is an objection fatal to the claim of the appellees, viz. : that it is a case not proper for the " cognizance of a jury." In the case of *Plimpton* v. *Somerset*, 33 Vt. 283, ALDIS, J., says : " Even in common-law courts there are many cases in which by the custom of the common law no jury trials can be had as in account, and its derivative book account." Proceedings, by *trustee process*, in laying out highways, in assessing damages for property taken for public use, and those in which the issue is tried by the court, although in common-law courts, are held not to be within the provisions of the constitution relating to jury trials ; because by the custom of the common law no such trials are had in such cases. It was further held in the case last cited that " the *immemorial practice* of proceeding to trial without a jury in a certain class of

cases in the common-law courts of England and this country, has been held conclusive to show that they are not ' proper for the cognizance of a jury' within the terms of the constitution, and were not intended to be therein included." See in addition to the case above cited, *Huntington* v. *Bishop*, 5 Vt. 186; *Gold* v. *Vt. Cen. R. R. Co.*, 19 Vt. 478; *Brown et al.* v. *Irvin*, 21 Vt. 68; *Tyler* v. *Beacher et al.*, 44 Vt. 648.

The matter in issue between the parties in this case is by way of an accounting,—the settlement of an account; the appellees are called upon by the court to render an account of their steward-ship as to the funds and property received by them under the bequest, and their care and management of the same; and by long and unbroken custom in all courts, including those of com-mon law, such accountings are never sent to a jury. It is un-doubtedly true that questions may arise upon an accounting by trustees, which would be very proper ones to send to a jury, as they may in the auditing of accounts in actions at law, and in other cases where no jury trials are permitted; but this is not the test of a party's right to a jury trial. In the settlement of a trustee's single account, numerous such questions might arise, wholly diverse, relating to different subjects, in no way connected, and a proper disposition of which by a jury it would hardly be possible to expect; and the case might be further complicated by the fact that upon an appeal, as will hereafter be seen, every item of the account, whether objected to or not in the Probate Court, is open for examination in the appellate court. It being an account-ing, we have no hesitancy in saying that such a case is " not proper for the cognizance of a jury," and therefore the action of the County Court was not subject to any constitutional objection. It only remains then for us to consider whether the action of the County Court was according to the rules of law as provided by c. 48, s. 34, Gen. Sts. The County Court is given power by c. 30, s. 54, Gen. Sts., to appoint commissioners to take, and report to the court the accounts of any executor, administrator, or guar-dian in a case appealed from a Probate Court. The appellees were originally executors, and although no formal decree was issued by the Probate Court decreeing the property to them in

trust, upon the settlement of their account in November, 1873, it was ordered that the balance then in their hands remain in the hands and custody of the said trustees under the provisions of the will; and in May, 1878, they gave a bond as executors and trustees. If the appellees were acting as executors, the court had the power under the statute last referred to, to make the appointment it did; and if they were acting as trustees, we think they possessed the like power. The Probate Court is authorized by s. 13, c. 59, Gen. Sts., to hear and determine in equity all other matters relating to the trusts mentioned in that chapter, and among the trusts mentioned are those existing under the provisions of any will. An appeal having been taken, we think the County Court should act as a higher court of probate, and hear and determine in equity all matters relating to the trust in question. *Adams* v. *Adams*, 21 Vt. 162; *Holmes* v. *Holmes*, 26 Vt. 536; *Hilliard* v. *McDaniels*, 48 Vt. 122. The County Court thus possessing the powers of a court of equity, was required to take action concerning the settlement of the trust account. Every item of that account, whether objected to or not in the Probate Court, was open for examination. *Barker* v. *Rogers*, 2 Vt. 440. A reference to a master is an ordinary proceeding of a court of equity; and among the subjects of reference is matter of account. Lube's Eq. Pl. 2d Am. ed. 65. And we think it immaterial whether the person appointed is called master or commissioner; he is the mere agent of the court, whose duty it is to examine the matters referred to him, and make report thereof to the court. In whatever character the appellees were acting, the action of the court referring the matter to a commissioner to take the account was authorized by law.

A query has been suggested, whether the status of the case in the County Court was such that it was in readiness for the appointment of a commissioner,—whether it was not necessary that pleadings should have been filed and an issue made. This would, no doubt, have been the case had we held that the parties were entitled to a jury trial; but by the appeal the papers in the case passed to the County Court, the trustees' account was among them, and was presented for settlement, both parties insisting upon an adjustment

*In re* Weatherhead.

of it, but differing as to the mode of trial. No plea that the appellees were not liable to render an account having been interposed, it was the duty of the court to adjust the account, and in so doing they had a right to adopt such method as was warranted by law. We think the appointment of a commissioner for that purpose proper ; and such was the practice of this court when appeals to it were taken directly from the Probate Court : see *Barker* v. *Rogers, Admr.* 2 Vt. 440, where an appeal from the settlement of the account of an administrator was taken, entered in court, and then sent to commissioners to report the accounts. The difficulty in settling an account involving many different issues, by a jury trial, needs only to be suggested to be at once obvious ; and only remedied by granting a separate trial upon each question, or a disposition in some other mode than a trial by jury. A separate trial upon each issue might cause such delays, and involve the settlement in such perplexities, as to be really a denial of justice. As early as 1802, the Supreme Court, in *Wadsworth* v. *Fassett, Guardian,* 2 Tyler, 127, under the former practice of appeals to this court, said : " In all appeals from the Probate our proceedings must be so far conformable to the proceedings in that court as to carry the design of the probate system into the most beneficial effect. If on appeals from decrees in the Probate Court, the appealed causes are to be subjected to the rules of pleading ordinarily practiced in this court, delays would be created every way repugnant to the speedy settlement of the estates of deceased persons."

In *Wadsworth* v. *Fassett, supra,* upon the entry of the case in the appellate court the appellant was ordered to file his objections to the account in the nature of a bill of exceptions, or exceptions to the report of auditors, and the court proceeded to consider such objections. We think it the duty of the court to hear the case *in banc,* or send it to a master or commissioner to state the account and render judgment as the circumstances of the case require.

The judgment of the County Court is affirmed, and cause remanded for further proceedings.