## IN RE HARRIET C. PECK'S ESTATE.

May Term, 1913.

Present: ROWELL, C. J., MUNSON, WATSON, and POWERS, JJ., and
BUTLER, Superior J.

Opinion filed October 18, 1913.

*Appeal in Probate Proceedings—Wills—Right to Jury Trial—
Effect of Submission of Issues to Jury—Right of Surviving
Husband—Estoppel to Elect to Take Under Statute—Pre-
sumptions in Support of Judgment—Distribution of Estate
—Appeal—Issues—Admissibility· of Evidence.*

The right to a trial by jury, given by P. S. 2984 on appeal from a de-
cree of the probate court, is a statutory, not a constitutional, right,
and so may be enlarged or restricted at the pleasure of the Legis-
lature.

Since the enactment of §3, No. 56, Acts 1908, providing for compulsory
references in cases where there is no constitutional right to a
jury trial, a trial by jury on appeal from the decree of a probate
court is a matter of favor, and not of right, as it was when *Lynde*
v. *Davenport,* 57 Vt. 597, was decided.

On an appeal from a probate court, in a case where a jury trial is
not a constitutional right, the county court can submit to the jury
such questions as it pleases, can withdraw from the jury one or
all of the issues at any stage of the trial, and the verdict is not
binding on the court, but merely advisory, the court being· at lib-
erty to render judgment thereon, or to disregard it, find the facts
on the evidence, and render judgment accordingly.

Where the will of a deceased wife directed certain payments to be
made to designated beneficiaries, and another was induced by those
provisions to become the guardian of some of those beneficiaries
and to make certain contracts for their care and support in ex-
pectation that the payments would be continued and would be
available for the payment of such expenses, and no damages were
paid on account of any breach of those contracts, the fact that
those payments were discontinued for a time, but were thereafter
ordered by the probate court to be kept up, and the arrearages
were allowed, did not show such prejudice to the beneficiaries or

their guardian as would estop the surviving husband of the testatrix from electing to waive the provisions of the will, within the extended time duly granted therefor by the probate court, since the prejudice, if any, was not owing to any act of the husband, but to refusal to pay according to the will.

On a jury trial of an appeal from the probate court distributing a testatrix's estate, the rulings of the court in refusing to submit the question whether the husband of the testatrix had elected to take under the will before filing his formal written waiver of the provisions of the will in his favor, and in disposing of appellee's requested instructions, *held* to amount to a finding that the allegations of election or estoppel were not established by the evidence, rather than a holding that there was no evidence tending to support those allegations.

Where a record is reasonably susceptible of a construction that will support the judgment, it will be given that construction on review, although it may also be subject to some other construction, for all fair and just constructions and intendments should be made in favor of the decision below.

A finding of fact by the trial court on sufficient evidence is conclusive.

On appeals from decrees of a probate court in the settlement of decedents' estate, the county court sits as a higher probate court, proceeds as if the case were originally brought there, and is not confined to questions considered by the probate court; but the questions of fact involved should be defined by proper pleadings, and so it is not error for the court to render judgment without regard to a question of fact not defined by the pleadings.

The surviving husband of a testatrix, leaving no children nor representatives of children, is entitled to have from his wife's estate, upon duly waiving the provisions of the will in his favor, $2,000 and one-half the remainder, just as he would if she had died intestate.


APPEAL from a decree of the probate court distributing the testate estate of Harriet C. Peck, William C. Peck, one of the legatees, appellant. The issues made by the pleadings are stated in the opinion. Trial by jury at the March Term, 1909, Chittenden County, *Taylor*, J., presiding. At the close of all the evidence the court submitted the special questions recited in the opinion, directed how the jury should answer them, and rendered judgment on the directed special verdict, affirming the

decree of the probate court. The appellant excepted. The opinion states the case.

*C. S. Palmer, V. A. Bullard* and *T. W. Moloney* for the appellant.

*W. B. C. Stickney* for the appellees.

POWERS, J. This is an appeal by a legatee from a decree of the probate court for the district of Chittenden, making final distribution of the estate of Harriet C. Peck, who died testate and without issue. The essential facts are so fully shown by the two cases heretofore passed upon by this Court,—*Clark* v. *Peck's Exrs.*, 79 Vt. 275, 65 Atl. 14, and *In re Peck's Est.*, 80 Vt. 469, 68 Atl. 433,—that they need not be here recited. When the latter case was remanded, final judgment was entered in the county court in favor of the executors of Edward W. Peck. This was pursuant to a stipulation, which, in effect, reserved to this appellant the right to raise and insist upon the same questions in any further proceedings in the probate court. Accordingly, when Mrs. Peck's estate was ready for distribution, and the probate court adjudged that the waiver filed by Mr. Peck was operative, and made a decree giving him two thousand dollars and one-half of the remainder of the property, this appeal was taken. In the county court, by agreement of the parties and consent of the court, the issues were made up by an amended petition filed by the appellant, an amended answer of the executors, and a replication thereto. The case was tried by jury to the extent hereinafter shown, and at the close of the evidence, the court submitted to the jury two special questions as follows:

"Does the jury find anything was done by the said Edward W. Peck in his lifetime prejudicial to the rights of the said William H. Clark or any of the other legatees under the will of said Harriet C. Peck, except his waiver of the provisions of said will, pursuant to the statute?"

"Does the jury find that said William H. Clark or any of the other legatees under the will of said Harriet C. Peck have suffered or will suffer any injury by reason of anything done by said Edward W. Peck in reference to the estate of the said Harriet C. Peck, or with the property of said estate before his

determination to waive the provisions of the will of the said Harriet C. Peck, and the filing of the notice of said waiver, December 12, 1904?"

The court directed the jury to answer both these questions in the negative, and thereupon rendered judgment according to the claims of the appellees, thereby affirming the decree of the probate court.

Exceptions were allowed to various rulings of the court below, a consideration of some of which requires an examination into the character and effect of a jury trial in such cases.

By P. S. 2983, one who appeals from a decree of the probate court is required to file in the county court a certified copy of the record of the proceedings appealed from. P. S. 2984 provides that "when such certified copy is filed in the county court, it shall try the question, and if a question of fact is to be decided, issue may be joined thereon under the direction of the court, and a trial had by jury." This right to a trial by jury is, however, statutory and not constitutional. *In re Weather-head's Est.*, 53 Vt. 653; *In re Welch's Will*, 69 Vt. 127, 37 Atl. 250. The Legislature, therefore, can enlarge or restrict the right at pleasure. P. S. 2984 was formerly R. L. 2279, under which it was held in *Lynde* v. *Davenport*, 57 Vt. 597, that a trial by jury was a matter of right. But after the passage of No. 129, Acts of 1884, providing for compulsory references in certain cases, it was held that a jury trial in probate appeals was no longer a matter of right, but of discretion. *In re Welch's Will*, 69 Vt. 127, 37 Atl. 250; *Hulburd* v. *Miller's Estate*, 72 Vt. 110, 47 Atl. 393. By §28 of No. 63, Acts of 1906, the act of 1884, a part of which had become V. S. 1437, was amended and this provision for compulsory references was stricken out, leaving the law in this respect now under consideration as it stood when *Lynde* v. *Davenport, supra,* was decided. This section became P. S. 1792. By §3 of No. 56, Acts of 1908, the statute was again amended by restoring the provision for compulsory references. This act was approved January 13, 1909, and became effective February 1, 1909, under P. S. 36.

This case was tried at the March Term, 1909, so under the authority of *In re Welch's Will* and *Hurlburd* v. *Miller's Estate*, it must be held that a trial by jury was not a matter of right, but of favor. This being so, the discretion of the county court was not exhausted when it granted a jury trial, but continued

throughout the trial. It could submit such questions to the jury as it pleased; it could withdraw from the jury one or all of the issues at any stage of the trial. The verdict, when rendered, would not be binding upon the court, but would be advisory, merely. The court could follow or ignore it. It could render judgment upon it or it could disregard it, find the facts upon the evidence, and render judgment accordingly. For the rule is that where a trial by jury is not a constitutional or statutory right, but the court seeks the aid of the jury in the determination of one or more questions of fact, it may adopt the findings of the jury, modify them, or render a decision as though the trial had taken place without a jury. *Kelley* v. *Home Savings Bank,* 103 App. Div. 141, 92 N. Y. 578.

The most familiar application of this doctrine is to issues in chancery. In some jurisdictions, such issues, even, are within statutory or constitutional provisions requiring a trial by jury. But in those jurisdictions where a trial by jury in equity cases is not a matter of right but of discretion, it is held that the verdict is not binding upon the chancellor, but is advisory, merely; it may aid his conscience, but cannot control his judgment. *Selfridge* v. *Leonard-Heffner Machine Co.,* (Col.) 117 Pac. 158, Ann. Cas. 1913 B, 282; *Short* v. *Estey,* (Mon.) 33 Mont. 261, 83 Pac. 479; *Ramsay* v. *Hart,* 1 Ida. 423; *Pettinger* v. *Pettinger,* (Ill.) 70 N. E. 699; *Whitlock* v. *Consumer's Gas Trust Co.,* (Ind.) 26 N. E. 570; *Brown* v. *Kalamazoo Cir. Judge,* (Mich.) 42 N. W. 827, 5 L. R. A. 226, 13 Am. St. Rep. 438; *Dumbach* v. *Bishop,* 183 Pa. St. 602, 39 Atl. 38; *Hull* v. *Watts,* 95 Va. 10, 27 S. E. 829; *Quinby* v. *Conlan,* 104 U. S. 420, 26 L. Ed. 800; *Wilson* v. *Riddle,* 123 U. S. 608, 8 Sup. Ct. 255; *I. & O. Land Improv. Co.* v. *Bradbury,* 132 U. S. 509, 10 Sup. Ct. 177, 33 L. Ed. 433; *Bank* v. *Alter,* (Neb.) 85 N. W. 300.

And it is also held that this discretion continues throughout the entire hearing of the case, and authorizes the court, at any stage of the proceedings, to discharge the jury without a verdict and find the facts for itself, or direct a verdict according to its own ideas. *DeGraff* v. *Manz,* (Ill.) 96 N. E. 516; *Riehl* v. *Riehl,* (Ill.) 93 N. E. 318; *Thomas* v. *Ryan,* (S. D.) 123 N. W. 68.

These holdings are harmonious and logical and bring the whole matter within Prof. Greenleaf's rule that in proportion

to the duty of directing an issue to the jury is the obligation on the judge to be governed by their verdict.    3 Greenlf. Ev. §266.

The doctrine under consideration was applied in *Dyson* v. *Rhode Island Co.*, (R. I.) 57 Atl. 771, 65 L. R. A. 236.    It is therein held that the power of the court to assess the damages without the aid of a jury, in case of default, was not taken away by a constitutional provision preserving the right of trial by jury inviolate, since at the time of the adoption of the constitution, the court was following the common-law practice of assessing damages in such cases, without calling a jury.    And it is further held therein that if, under a statute providing that in such cases "damages shall be assessed by the court, with or without the intervention of a jury, in the discretion of the court," a jury was called to assess the damages, its findings would have to be approved by the court before they became effective.    See, also, *Dean* v. *Willamette Bridge Co.*, (Or.) 15 L. R. A. 614, 29 Pac. 440.

In *Gilruth* v. *Gilruth*, 40 Ia. 346, the probate of a will was contested on the ground of lack of testamentary capacity and undue influence.    A jury trial was demanded and allowed, and these issues submitted.    The jury found that the testator was of sound mind, but that the will was procured by the exercise of undue influence.    The court set aside the second finding and allowed and probated the will.    In this, it was held that there was no error.    The court said: "As the court might properly have refused to submit the questions of fact involved in the case to a jury, he did not err in setting aside the facts as found by the jury, and in determining the questions anew."

The announcement of this decision was promptly followed by an amendment of the code so as to make a trial by jury in such cases a matter of right.    Since which time it is held in Iowa that the verdict is binding upon the court.    *Collins* v. *Brazill*, 63 Ia. 432, 19 N. W. 338.

In re *Moore*, 72 Cal. 335, 13 Pac. 880, was a contest over the account of an administrator and was tried by jury.    Many of the errors complained of arose in the impaneling of the jury, and the allowance or refusal of instructions.    It was held that a trial by jury was not a matter of right, and that their verdict was merely advisory to the court, and therefore irregularities in the formation of the jury, and errors in the instructions were immaterial.

*In re Jackman's Will*, 26 Wis. 104, was a probate appeal which arose under a statute which provided that the circuit court should "proceed to the trial and determination of the question according to the rules of law; and if there shall be any fact to be decided, issue may be joined thereon under the direction of the court, and a trial thereof be had by jury." It was held that a jury trial was discretionary, and that the procedure was strictly analogous to the course in chancery, and that the effect of the verdict was the same—advisory, merely.

*In re Carroll's Will*, 50 Wis. 437, 7 N. W. 434, was an appeal from the allowance of a will. The issues of fact were, by order of the court, submitted to a jury, but during the trial, the court withdrew all questions except those of a testamentary capacity and undue influence. When the evidence was all in, the court took the case from the jury entirely, found the facts for itself, and affirmed the judgment of the county court. It was held that this disposition of the matter was within the power and discretion of the court; that submitting special issues to a jury in such cases is strictly analogous to the course pursued in courts of chancery when a feigned issue is awarded, and is subject to the discretion of the court; that the court might, if it saw fit, determine all questions of fact, as well as of law, without the intervention of a jury, and that the verdict, when taken, is not conclusive and binding upon the court, but advisory, and could be disregarded.

In *Withee* v. *Rowe*, 45 Me. 571, under a statute very much like our own, the court said, in effect, that when questions of fact arise in probate appeals, the proceedings are analogous to those in equity when issues are prepared for a jury under the direction of the court, and that it is for the court to decide what questions of fact it will send to the jury and what it will decide for itself.

*In re Neasmith*, 147 Fed. 160, 77 C. C. A. 402, was a case arising under the Bankruptcy Act, and it was said therein that if a jury trial was demanded according to the act it was according to the course of the common law. But if the parties waived a trial by jury, the judge could as a matter of discretion, submit issues of fact to a jury, and that in such case the verdict returned was not obligatory, but advisory only, as in cases in equity. The opinion in this case was given by Judge Lurton.

To the same effect is *Oil Well Supply Co.* v. *Hall,* 128 Fed. 875, 63 C. C. A. 343.

In the case in hand, the court did not formally withdraw the other issues from the jury, nor did it expressly find the facts for itself, except as hereinafter shown, but directed the jury how to answer the question submitted. This was proper procedure, and was, in effect, a finding by the court in accordance with the special verdicts. *Cox* v. *Cox,* 91 Mo. 71, 3 S. W. 585.

While this view of the law applicable to the case makes immaterial and therefore eliminates many of the exceptions relied upon, it does not dispose of the case.

By the amended pleadings, the petitioner's case is put upon two grounds: First, estoppel; second, election.

The special questions submitted to the jury are evidently to be referred to the ground of estoppel,—using that term .in the sense that the estoppel must be based upon acts of Edward W. shown to have been so manifestly inconsistent with his express election to waive the will, that justice and equity, as respects the rights of others, require it. The court rules that there was no evidence tending to show that any of the beneficiaries under Mrs. Peck's will had been prejudicially misled by Mr. Peck's conduct prior to his application for an extension of time. This ruling was without error. Findings in accordance with the directed verdict were amply supported by the evidence in the case. Indeed, the only evidence of any change of position by any of such beneficiaries on account of Mr. Peck's conduct which we are referred to is that showing that Mr. Odlin was thereby induced to become guardian of certain members of the Clark family and to enter into certain contracts for their care and support in expectation that Mrs. Peck's beneficences were to be continued and would be available for the payment of the expenses so incurred. A continuance of these donations was provided for in the will, and payments thereof were kept up for a time, but finally these payments were discontinued by advice of counsel. It was admitted that no damages were paid on account of any breach of these contracts, and the probate court adjudged that the payments to Mr. Clark should have been kept up, and made an allowance of the arrearages. So the prejudice which Mr. Odlin suffered, if any, arose not from anything Mr. Peck said or did, at their interview, February 27, 1904, nor at any other time, nor yet from his final action in waiving the will; but

from the wrongful refusal to pay according to the will, and as the probate court decided should have been done.

This being so, no ground was left for the petitioner to stand on, except the ground of election. In this respect it was the theory of the appellant all the way through the trial that Mr. Peck's conduct prior to the filing of his application for an extension of time, amounted in law to an election to accept the provisions of the will, and forever foreclosed him from asserting his statutory right of waiver. His counsel argued, not only that an election once made was final, but that it was not necessary to show that anyone was injured or prejudiced thereby; that an election, pure and simple, differs from an estoppel in this respect, and that such an election itself works an estoppel, regardless of results. In answer to this proposition, the executors said, first, that no such election was made, and, secondly, that by the true force and meaning of the decision of this Court when the case was here before, *In re Peck's Est.*, 80 Vt. 469, 68 Atl. 433, it was the law of the case that Mr. Peck could not be precluded from taking in opposition to the will by virtue of his express election, unless his acts, shown to have been inconsistent therewith, produced such resultant injury or prejudice to the other legatees as to render such taking unjust and inequitable— nothing short of which could constitute an estoppel *in pais*. But in the view we take of the case shown by the record before us, we are not called upon to express an opinion on the soundness of the petitioner's claim regarding the doctrine of election.

It appears from the record of the trial, which is referred to in the bill of exceptions and made to control, that at the close of the evidence the petitionees requested the court to instruct the jury (1) that the allegations of the petition are not made out; and (2) that a finding be directed in accordance with the allegations of the petitionees' answer, that nothing prejudicial to the legatees was done by Edward W. Peck in his lifetime, etc.. These requests were argued at great length by counsel on both sides, in the course of which the allegations of the petition, and of the answer in the respect named, were called to the attention of the court. At the close of these arguments the court in discussing the case used the language and made the holdings following, which for convenience are here numbered 1, 2, 3, 4 and 5 respectively:

1. "With reference to the motion made by the executors, the appellees, we have reached a conclusion which we think disposes of the case,—that is, disposes of the final judgment in the case, but we desire to state to counsel the views we hold about it and submit the matter for some further consideration as to the way the case should be shaped in order to present the case fairly in Supreme Court."

2. "In short, we are agreed and feel pretty confident of the position that the evidence in the case does not support an estoppel; that the allegations of the petition so far as they set out an election and estoppel or waiver are not supported by the testimony, but just how far the requests for instructions as to the facts are concerned, how far the court should go in complying with those requests, we are not quite satisfied as yet."

3. "There is no dispute but that Mr. Peck in his lifetime, and within the time which the Supreme Court has said he had a right to make the waiver, gave notice that he elected to waive the provisions of his wife's will, and as we regard it the only question that was left open by the Supreme Court in the disposition of the matter there was the question whether Mr. Peck's conduct was such, between the time when the will was filed for probate, and the time when he finally gave notice of his waiver, on the 12th of December, that it would be unjust and inequitable for him or his representatives to ·assert that waiver. In other words, as we regard it, it presents merely the question of whether there was a course of conduct on his part which would constitute an estoppel *in pais*. The evidence, we think, falls short of establishing such an estoppel in that there is no evidence, as we view it, which tends to show that the petitioner, or any of the other legatees, were prejudiced by anything which Mr. Peck did during the time when he was considering whether he would waive or not. That is, allowing that the evidence stands as is claimed by the petitionees, that he had not elected,—or on the other hand, if it is as claimed by the petitioner, that he had taken possession,—done acts which would tend to show an intention to elect. We think, in other words, that the doctrine of election, pure and simple, does not apply, but it is more properly the doctrine of estoppel,—equitable estoppel; and that something more than the mere reaching the conclusion that he would take under the will, before he filed his waiver, has to be considered."

4. "We have considered the case that is referred to in the 5th Cushing,—*Fitts & Wife* v. *Cook*,—and while there is a sentence in the opinion which would possibly be susceptible of the construction given to it, we hardly think that is an authority for the contention that is made by the petitioner, that if Mr. Peck had done acts from which an election might be inferred, that the doctrine of estoppel would fasten upon the case, because by afterward waiving the provisions of the will some legatees or devisees would be affected by it in the distributive share which would come to him. We think it must be such conduct that the prejudice must arise from the conduct of Mr. Peck rather than from the exercise of his statutory right, and we hardly think that case could be said to be authority for a contrary proposition."

5. "This view of the matter would seem to dispose of the final judgment here, but just what disposition should be made of the several requests as we have already intimated, we haven't fully determined."

After some more discussion in regard to the questions to be submitted to the jury, one of the petitioner's counsel said to the court: "If I understand the court correctly the ruling probably will be that there is no evidence tending to support the allegations of this petition, amended or otherwise, upon which this case was tried." To which the court answered, "We haven't gone quite so far as that."

Then after further discussion, counsel for the petitionees said they were satisfied to have a ruling of the court upon their request to ask the jury this question: "Does the jury find that anything was done by the said Edward W. Peck in his lifetime prejudicial to the rights of the said William H. Clark or any of the other legatees under the will of the said Harriet C. Peck, except his waiver of the provisions of said will pursuant to the statute, and that said legatees have suffered and can suffer no injury by reason of anything done by the said Edward W. Peck in reference to the estate of the said Harriet C. Peck before his determination to waive the provisions of the will of the said Harriet C. Peck, and the filing of his notice of such waiver December 12, 1904, and that the jury be instructed to answer that inquiry, 'No.'"

Counsel for the petitioner then requested the court to submit to the jury the question: "Did Edward W. Peck, previous

to September 22, 1904, with full knowledge of the title, value and all other facts concerning the property of which his wife, Harriet C. Peck, died seised, and with full knowledge of his statutory rights of election, under the provisions of the will of his said wife, elect to accept and did accept the life estate provided for him by the provisions of her said will?''

The record shows that the next morning (the trial proceeding) counsel for the petitionees passed to the court a paper, a copy of which he had handed to the opposing counsel, and by the context of the record it may fairly be inferred to have been a blank special verdict containing the request last above quoted as made by the petitionees' counsel, but divided into two questions—in fact the two questions later answered ''No'' by the jury under the direction of the court.

The court said, ''In view of the disposition which was indicated last night, we think that the requests made by the petitionees, the executors, should be granted and the request of the petitioner, as contained in the paper handed up yesterday, marked 'Z,' and the requests just now presented, numbered one to twelve inclusive, should be denied.''

Whereupon counsel for the petitioner said: ''That is done upon the ground or because of the previous ruling in the case and on the ground that there is no evidence tending to show any of those things?'' The court answered: ''The ruling is not to the effect that there is no evidence tending to establish one or more of these requests, but upon the ground that the questions covered by the petitionees' requests are held to be determinative of the issue.''

The petitioner excepted ''to the holding of the court that there was nothing left to be determined in the case by the Supreme Court except what was suggested last night;'' ''to the holding of the court that an election doesn't apply in a case of this kind,—that is, if it is necessary, to protect our rights;'' and ''to what the court has said and the holding of the court upon the matter of the election.''

Unless this last exception is broad enough to cover the holding of the court as shown in the last clause of paragraph marked ''2,'' quoted above, there is no exception to that ruling. But in the bill of exceptions, and in the briefs of counsel, the exception was treated as broad enough for that purpose, and we so treat it.

Bearing in mind the questions before the court on the petitionees' motion, made and strenuously argued immediately following the close of the evidence, for instructions to the jury (a) that the allegations of the petition were not made out; and (b) that nothing prejudicial to the legatees was shown to have been done by Edward W. Peck in his lifetime, etc., a careful examination of just what the court said in ruling thereon, appearing in paragraphs numbered from 1 to 5, inclusive, respectively, makes manifest the purpose and effect of the holdings there made.

The court starts off by saying, paragraph 1, "With reference to the motion made by the executors, the appellees, we have reached a conclusion which we think disposes of the case,—that is, disposes of the final judgment in the case, * * *" Paragraph 2, "In short, we are agreed and feel pretty confident of the position that the evidence in the case does not support an estoppel; that the allegations of the petition so far as they set out an election and estoppel or waiver are not supported by the testimony, * * *"

So far the holdings related exclusively to the facts, and they were as broad as the allegations of the petition in the respects named. It is there expressly held,—and the holding is made emphatic by the court's saying in connection therewith that they "feel pretty confident of the position,"—that the evidence does not support an estoppel, and that the allegations of the petition so far as they set out an election and estoppel or waiver are not established. These were not rulings on the tendency of the evidence, but were in effect findings on the weight of the evidence; and had the court stopped here, the burden of proof being on the petitioner, there can be no reasonable doubt that the case would stand with the facts essential to the petitioner's right of recovery not made out. And this would be determinative of the whole case—both on the question of estoppel and on that of an election, pure and simple. It is with the latter that we are now concerned. The court proceeded, as appears in paragraph "3," to discuss what it regarded to be the law of the case according to the opinion of this Court, same case, 80th Vt., that is, after stating that there was no dispute but that Mr. Peck, within the time allowed by law therefor, gave notice that he elected to waive the provisions of his wife's will, the court said, as they regarded it, the only question left open by the Supreme

Court, in the disposition of the matter, was the question whether Mr. Peck's conduct was such between the time when the will was filed for probate and the time when he gave notice of his waiver, on the 12th day of December, that it would be unjust and inequitable for him or his representatives to assert that waiver,—in other words the court regarded it as presenting merely the question of whether there was such a course of conduct on his part as would constitute an estoppel *in pais*. The court then stated that it thought the evidence fell short of establishing such an estoppel, in that there was no evidence tending to show the petitioner or any of the other legatees prejudiced by anything done by Mr. Peck during the time when he was considering whether he would waive or not. "That is, allowing that the evidence stands as is claimed by the petitionees, that he had not elected,—or on the other hand, if it is as claimed by the petitioner, that he had taken possession,—done acts which would tend to show an intention to elect. We think, in other words, that the doctrine of election, pure and simple, does not apply, but that it is more properly the doctrine of estoppel, equitable estoppel." What the court said in this paragraph is fairly and reasonably susceptible of the construction as having reference solely to what the court deemed to be the law of the case, excepting that it stated more particularly a respect in which the evidence fell short of proving an estoppel *in pais*. The court also stated that as it regarded the law in the 80th Vt., the question of such an estoppel was all there was left in the case, and that the doctrine of election, pure and simple, did not apply; yet this related solely to the court's views of the law as laid down in the 80th Vt., and did not in any wise relate to, modify, limit, change, or control the determination of the facts respecting such an election—they were left exactly as disposed of in the last clause of paragraph "2." The same may be said of what the court said to the jury in directing them to answer the two questions, "No." As seen from what has already been said in this opinion, the action of the court in finding adverse to the petitioner on the evidence, as shown in said clause, was within the proper exercise of the powers of the court, irrespective of the jury, so even if the court did give, in paragraph "3," an erroneous interpretation of the holding in the 80th Vermont (a question which we do not decide), and consequently a wrong reason for its ruling that the doctrine of election pure and

simple does not apply, it is not reversible error. Certainly that doctrine did not then apply, because, if for no other reason, the court had, on the evidence, expressly negatived the fact that such an election was made. We must decide whether the action of the court below was correct, irrespective of the reason given therefor. *Fairbanks* v. *Stowe,* 83 Vt. 155, 74 Atl. 1006, 138 Am. St. Rep. 1074; *Interstate Commerce Com.* v. *Illinois Cent. R. Co.,* 215 U. S. 452, 54 L. ed. 280, 30 Sup. Ct. 155.

That the views here expressed regarding the holding in paragraph "2" are correct, further seems pretty evident from the language of the court in paragraph "1," "With reference to the motion made by the executors, the appellees, we have reached a conclusion which we think disposes of the case, that is, disposes of the final judgment in the case, * * *" followed (paragraph "2"). "In short, we are agreed," etc., thus showing the connecting thought. The court's action is to be such, as in its belief, will dispose of the final judgment in the case, and that on the motion before it. The holdings in paragraph "2" were of the steps deemed necessary by the court to that end. This is further indicated by the answer of the court to the statement of one of the petitioner's counsel, "If I understand the court correctly the ruling probably will be that there is no evidence tending to support the allegations of this petition, amended or otherwise, upon which this case has been tried." The court answered, "We haven't gone quite so far as that." Evidently the court then had in mind just what it had held in paragraph "2"; not that there was no evidence tending to support the allegations of the petition, but that the allegations were not established. Again (the next day of the trial) when the court granted the requests of the petitionees, and denied those of the petitioner, counsel for the petitioner said to the court, "That is done upon the ground or because of the previous ruling in the case, and on the ground that there is no evidence tending to show any of those things?" To this the court answered: "The ruling is not to the effect that there is no evidence tending to establish one or more of these requests, but upon the ground that the questions covered by the petitionees' requests are held to be determinative of the issue." The "petitionees' requests" here referred to by the court may by reasonable construction include all of the petitionees' requests upon which rulings were made in the disposition of the case. This

view is very materially aided by paragraph "5." The court there says, "This view of the matter would seem to dispose of the final judgment here, * * *" The preceding paragraph pertained wholly to the construction of the Massachusetts case in 5th Cushing, there mentioned, hence it is not sensible to say that the words "This view of the matter," above quoted, had reference merely to what the court said in expressing its views of that case. They had reference to all the court had said in disposing of the motion before it. The court had then gone far enough, in its own mind, to do as it stated in the 1st paragraph, namely, to dispose of the final judgment in the case. True the court further said in the fifth paragraph that "just what disposition should be made of the several requests," it had not fully determined. Yet they were all in law disposed of by the court; for to the only questions in any form submitted to the jury the answers were directed by the court upon its own view of the evidence; and this, we have already said, was in effect a finding by the court in accordance with the answers directed, and exactly as had been ruled in paragraph "3" more specifically than in the first clause of paragraph "2," but not inconsistent therewith. Nor did this action of the court in any wise pertain to the question ruled in the second clause of the last named paragraph, or affect the ruling there made.

Moreover, that the holding in that clause shown was and is given the same construction by the petitioner's counsel, as we gave it here, is manifest from their original brief; for therein, page 52, the 4th point assigned as error is, "In refusing to submit the case to the jury the court held as a matter of law: (a) Petitioner's evidence did not tend to support an estoppel. (b) The petitioner's allegations (in his petition) are not supported by the testimony. (c) The only question left open by the Supreme Court" in this case, 80th Vt., "was whether Peck's conduct between the time when the will was filed for probate and the time when he gave notice of a waiver, was such that it would be unjust or inequitable for him or his representatives to assert that waiver." And immediately following in the brief they say, "The petitioner contends that the court was in error in its rulings upon all three of these questions. That his evidence not only tends to show facts and circumstances which should estop Peck from claiming under his waiver, but is plus upon this question, and that it was established to such an ex-

tent that with the petitionees' concessions he was entitled to a directed verdict, or at least to go to the jury as indicated by his request or motion so to do. The same is true with reference to the ruling of the court that the allegations in the petitioner's petition are not supported by the testimony."

The record being fairly and reasonably susceptible of the construction by us above indicated, it is the duty of this Court to give it that construction if need be to the affirmance of the judgment. This is so even though it may also be subject to some other construction; for nothing is to be presumed against a bill of exceptions with a view to predicate error upon any decision of the court there detailed, but all fair and just constructions and intendments shall be made in favor of the decision below. *McCann* v. *Hallock,* 30 Vt. 233; *Cram, Admr.,* v. *Cram,* 33 Vt. 15. And "when a sentence of exceptions reasonably may bear two constructions, this Court is bound to adopt that one which will uphold the ruling of the trial court." *French* v. *Ware,* 65 Vt. 338, 26 Atl. 1096.

It follows that since the question of an election, pure and simple, by acts of Edward W., to take under the will, was determined against the petitioner on the evidence in the court below, and the evidence being upon careful examination found adequate to support such determination, it is conclusive upon this branch of the case.

It is claimed in behalf of the appellant that the decree was erroneous for the reason that Mrs. Peck had no estate of which she could make testamentary disposition, since all she had came from the estate of her father, by force of a will, which, properly interpreted, carried the property at her decease to her heirs in the Clark line.

As we have seen, the issues below were prepared by pleadings. Much deliberation was exercised in discussing and framing these issues. It was repeatedly asserted by counsel for the appellant that the only question or claim made was that Mr. Peck had by his conduct precluded himself from waiving the will. The appellant's petition, after referring in unmistakable terms to the property called Mrs. Peck's, ends with a prayer that the waiver be held for naught and all of the estate of Mrs. Peck distributed according to the terms of her will. Throughout the trial the appellant adhered to this position and trained every gun on that waiver. When the case was ready for judgment,

however, for the first time he made the claim that Mrs. Peck's will was inoperative and that distribution was to be made under the Clark will.

The will of Joseph Clark was admitted in evidence and Mr. Nichols testified that he "supposed" that Mrs. Peck's property came to her from her father's estate. No question under the Clark will, nor concerning the source from which came Mrs. Peck's property was made by the pleadings; and when it was objected that the Clark will should not be received in evidence because it was matter outside the issues, it was only admitted for specific and limited purposes—to show that Mr. Peck knew the character, amount and situation of his wife's estate, as evidence rendering it more probable that he would accept the provisions made for him in the will of Mrs. Peck, and to show what specific property came to Mrs. Peck thereunder.

Under our system of settling estates of deceased persons, the county court, in probate appeals, sits as a higher probate court. In a case like this, the proceedings are in the nature of proceedings *in rem,* and the county court is to investigate and decide all questions necessary to a proper distribution of the property involved. It is to proceed in the same manner as if the case was originally brought there, *Williams* v. *Robinson,* 42 Vt. 658, 1 Am. Rep. 359, and is not confined to questions actually considered in the probate court. *Maughan* v. *Burns' Estate,* 64 Vt. 316, 23 Atl. 583. Yet the trial in the county court is to be conducted according to recognized rules of procedure. Any questions of fact involved should be defined by proper allegations and replies, and when this is done, the trial should proceed as other trials do,—controlled by the rule that the court tries only the issues made by the pleadings. *Carpenter* v. *Welch,* 40 Vt. 251; *Columbian Granite Co.* v. *Townsend & Co.,* 74 Vt. 183, 52 Atl. 432; *Conn. Valley Lumber Co.* v. *Rowell,* 84 Vt. 24, 77 Atl. 873.

It may well be that it is the duty of the county court to investigate all questions brought to its attention in due course and by proper application. But we are not prepared to say that it is the duty of that court—at all times and in all circumstances—to inquire into every question of law or fact which may throw light on the ultimate rights of the parties or persons interested in the estate. To do so would impose upon the court unnecessary and unreasonable burdens. If the point here pre-

sented involved only a question of law, it might be reasonably held that it was the duty of the court below to have passed upon it, and our duty to review its decision thereon. But if it involves one or more questions of fact outside those covered by the pleadings, proper practice would require that these questions be carved out and determined before the court would be called upon to consider them. That this point did involve questions of fact cannot be denied; for the rights of the heirs and devisees under the Clark will might not depend alone upon the terms of the will itself. If we assume that Mrs. Peck's portion of the Clark estate was decreed to her by the probate court, this decree would have to be examined before it could be definitely determined what estate Mrs. Peck actually had. Such a decree would be within the jurisdiction of the probate court and would necessarily involve a construction of the Clark will in the very particular now under consideration. Whether Mrs. Peck took absolutely or only for life would be a question submitted to the probate court on hearing for final decree on the Clark estate, and its decision thereon, right or wrong, if unappealed from, would be conclusive. *Ward* v. *Congregational Church,* 66 Vt. 490, 29 Atl. 770; *Leavins* v. *Ewins,* 67 Vt. 256, 31 Atl. 297; *In re Wells' Est.,* 69 Vt. 388, 38 Atl. 83.

If we assume that distribution of the Clark estate was made pursuant to an agreement of the parties interested,—some suggestion of which fact appears in the record—then that instrument would control the rights of the parties and would have to be examined before these could be determined. Either way, questions of fact were involved, and at his own request the burden of proof had been put on the appellant.

In these circumstances it was not error for the court to render judgment without regard to the point made under the Clark will.

The court was not in error in allowing to Mr. Peck's executors as his statutory share of Mrs. Peck's estate, two thousand dollars and one-half the remainder of the whole estate. The language of the statute is too plain and unambiguous to allow construction to vary its meaning or change its effect. The rights of a surviving spouse are paramount to all others,—even to the power of the other to exercise the right of testamentary disposition. *In re Cunningham's Est.,* (Pa.) 20 Atl. 714, 21 Am. St. Rep. 901. Until these rights are satisfied, no will can be ef-

fective. So far as Mr. Peck was concerned,. when his waiver was established, it was as though Mrs. Peck had died intestate. He was to take his statutory share, and the balance of the estate was to be distributed under the will as nearly as possible. "Such waiver," said this Court in speaking of a widow's waiver of her husband's will, "blots out all the provisions of the will for the widow, and leaves the remaining provisions of the will in force, to be accommodated equitably to the state of the testator's property as left by such action." *Jones, Admr.* v. *Knappen,* 63 Vt. 391, 22 Atl. 630; *Pittman* v. *Pittman,* 81 Kan. 643, 27 L. R. A. (N. S.) 602, 107 Pac. 235; *Lewis* v. *Sedgwick,* 223 Ill. 213, 79 N. E. 14; *Anderson* v. *Piercy,* 20 W. Va. 282; *Dean* v. *Hart,* 62 Ala. 308.

Numerous exceptions were taken to the admission of evidence; these have all been examined and found to be without merit. Almost all of them relate to evidence as to the care and management of the estate, the manner in which the business was conducted, the books kept, and the relation of Mr. Peck and the executors to the property. The claim of the petitioner was that Mr. Peck had so conducted himself with relation to the property that he had become legally bound to abide by the terms of the will. The evidence excepted to tended to meet and explain that on which the petitioner relied, and was properly admitted.

Some other questions of small consequence were raised in argument, but an examination of them reveals no error.

*Judgment affirmed. Let a certificate go down.*

Powers, J., dissenting. I cannot agree that from this record it can reasonably be taken that the trial court found the facts under the allegations of an election or waiver against the petitioner. I fully approve the rule laid down in the opinion of the majority to the effect that every reasonable presumption is in favor of the judgment. But this rule only applies when the record makes it reasonable to apply it. If the record shows that an essential fact is left unfound, this rule cannot be invoked to supply it. And if this record shows that the court below did not find the facts referred to, or attempt to do so, the inference drawn by the majority is wholly unwarranted. That this record does show this seems to me too plain to admit of argument.

It must be remembered that the case was tried from beginning to end upon the assumption that a trial by jury was a matter of right. This is abundantly shown by the record. This view was taken by all concerned,—both court and counsel.

It is true that the court made use of the expressions quoted in the majority opinion. And if these stood alone, it might be our duty in support of the judgment to hold that they were to be taken as equivalent to an adjudication that the evidence was insufficient to establish an election, pure and simple, or a waiver, which have, I may say, many essential characteristics in common.

But these statements do not stand alone. The attitude of the court toward the election is abundantly and unmistakably shown in various other parts of the record.

In the first place, the special verdicts themselves show that the position of the court was, not that the evidence was insufficient to establish an election or waiver, but that that question was immaterial and inapplicable. Else why did the court refuse the petitioner's written request to submit that question to the jury, and allow the petitioner an exception to that ruling as shown on p. 595 of the transcript? The case was being tried as an ordinary jury case,—there not being a suggestion to the contrary from cover to cover of the transcript,—yet, without an intimation of any kind that the court was going to handle that question for itself, the request to submit the question of election or waiver was refused.

Again, it unmistakably appears that counsel for the executors understood the court's position to be that an election or waiver without prejudice to others was inapplicable to this case. They put themselves squarely upon the former decision of this case, and insisted that that question was then decided. So consistent and confident were they in their position that they again and again asserted that if there was *any* evidence *tending* to establish the petitioner's claim, he was entitled to have a verdict directed in his favor. This appears at least on three different occasions in the transcript, pp. 474, 531, 532. What was the "claim" to which this referred? That it embraced the proposition that an election, intelligently made, is irrevocable, though no one is misled to his injury, is too plain to be denied. That there was evidence *tending* to show this, all the judges, save one, agree.

But the most conclusive evidence against the view taken by the majority comes from the lips of the court itself. It is always unsafe and unfair to select specific statements without showing all that was said. It is so when considering a charge of a court; it is so when putting in evidence an admission of a party or witness. It must all be taken together, and its true significance and meaning be determined by considering the whole statement. In the very statement quoted from by the majority the court below makes plain the true meaning of the expressions quoted. The presiding judge went on to say: "As we regard it, the only question that was left open by the Supreme Court in the disposition of the matter there, was the question whether Mr. Peck's conduct was such, between the time when the will was filed for probate, and the time when he finally gave notice of his waiver on the 12th of December, that it would be unjust and inequitable for him or his representatives to assert that waiver. In other words, as we regard it, it presents merely the question of whether there was a course of conduct on his part which would constitute an estoppel *in pais*. The evidence, we think, falls short of establishing such an estoppel in that there is no evidence, as we view it, which tends to show that the petitioner, or any of the other legatees were prejudiced by anything which Mr. Peck did during the time when he was considering whether he would waive or not. That is, allowing that the evidence stands as claimed by the petitionee, that he had not elected, or on the other hand, if it is as claimed by the petitioner, that he had taken possession,—done acts which would tend to show an intention to elect. We think, in other words, that the doctrine of election, pure and simple, does not apply, but it is more properly the doctrine of estoppel, equitable estoppel; and that something more than the mere reaching the conclusion that he would take under the will, before he filed his waiver, has to be considered."

Now we know why the court declined to submit to the jury the petitioner's written question above referred to—the question of election or waiver, as distinguished from estoppel *in pais*. It was because the question of estoppel *in pais* was the "only question that was left open by the Supreme Court;" so that, as the trial court regarded it, the only question presented was whether there was such a course of conduct on the part of Mr. Peck as would amount to an equitable estoppel. And the only

particular in which the evidence fell short was that no one was prejudiced.

Can anything be plainer than that the court did *not* find any facts regarding an election, pure and simple? Is it not perfectly apparent that the court simply laid that question out of the case, as immaterial and inapplicable?

The majority says that it is not conceivable that the court below would leave one of the principal issues under the pleadings and the evidence undisposed of and yet render final judgment. But it appears as clear as sunlight that that is just what the court *did* do; and did it because that issue was immaterial and inapplicable. There was but one ground, in the view of the trial court, which was, in law—not in fact—available to the petitioner, and that was the ground of estoppel. The only reason why an election would not answer the petitioner's purposes was because the law required a full estoppel in order to bar Mr. Peck from the benefits of his statutory waiver.

If further evidence is needed, the record furnishes it.

For the sake of a clear understanding, I quote the question already referred to, which the petitioner asked to have submitted to the jury; it is found on p. 595 of the transcript:

"Did Edward W. Peck, previous to September 22, 1904, with full knowledge of the title, value and all other facts concerning the property of which his wife, Harriet C. Peck, died, seized, and with full knowledge of his statutory rights of election, under the provisions of the will of his said wife, elect to · accept and did he accept the life estate provided for him by the provisions of her said will?"

In further confirmation of my statement that counsel for the executors understood the position of the court to be what I have herein made it, I quote what they said about this request when it was presented to the court: *"That would be an immaterial inquiry;* that would be just such an inquiry in an ordinary case of a motion for judgment notwithstanding the verdict, *because the court has ruled,* whichever way that would be answered, *it would be immaterial unless the fact was made out* that this election and what had been done under it *was prejudicial."*

In speaking of this request of the petitioner, the court said:

"In view of the disposition which was indicated last night, we think that the requests made by the petitionees, the execu-

tors, should be granted, and the request of the petitioner, marked 'Z' (quoted above) and the requests just now presented numbered 1 to 12, inclusive, should be denied." Transcript, p. 597. Counsel for the petitioner then asked, "That is done upon the ground or because of the previous ruling in the case and on the ground that there is no evidence tending to show any of those things?" To which question the court made reply: "The ruling is *not* to the effect that there is *no evidence tending* to establish one or more of these requests, but upon the ground that the *questions covered by the petitionees' requests are held to be determinative of the issue.*" Transcript, p. 597. This, it should be remembered was *after* the statements quoted by the majority. And in the very teeth of this statement, the majority infer that the facts involved in the petitioner's question were found by the court against him. Are we to take the court's own word, or are we to assume that it did not know the basis of its own ruling?

That the court was fully conscious of the situation is abundantly shown on pages 598 and 599 of the transcript, where counsel for the petitioner said: "We desire an exception to the holding of the court that an election doesn't apply in a case of this kind,—that is, if it is necessary to protect our rights. We certainly depend upon this election and we say that if there was an election, as claimed by the appellants, that that of itself would work an estoppel; so that we desire an exception to what the court has said and the holding of the court upon the matter of the election."

Now, if the court, as assumed by the majority, found the facts on the election against the petitioner, why did it not say to counsel, when the foregoing exception was taken, "You misunderstand us; we do not hold that the doctrine of election is inapplicable, but we hold that you have failed in the proof, and we find the facts against you?"

Nor is this, even, all the evidence afforded by the record to negative the inference drawn by the majority. After all this had taken place, and it is recorded here in chronological order, the jury were returned to the court room, and the court thus addressed them:

"Gentlemen of the jury: The case has been before the court in your absence on motion for directing verdicts. The petitionees,—that is, the executors, concede in their motion, as

well as in argument thereof, that there is no controversy in the testimony; in other words, that all the facts relied upon by the petitioner, Mr. Clark, *are made out so far as there is any evidence in the case to support them.* There is, then, *no controverted question of fact* to go to the jury, and it only remains for us to instruct you as to the tendency of the evidence or want of evidence to make out any material fact.

There is no dispute but that Mr. Peck in his lifetime, and within the time fixed by law, gave the probate court sufficient notice that he elected to waive the provisions of his wife's will and take his distributive share under the statute. This being so, the petitionees are entitled to have the decree of the probate court, distributing the estate in accordance with the request filed with the waiver, affirmed, unless the petitioner makes out that Mr. Peck's conduct concerning the estate and his rights under the will were *such as to estop* him or his representatives from asserting such waiver. The petitioner contends that Mr. Peck, as evidenced by his conduct and declarations, prior to the filing of his waiver, elected to take under the will, and that he and his representatives are thereby precluded from asserting such waiver.

As we regard the law, the case presents the question whether Mr. Peck's conduct in that regard was such as would *constitute an equitable estoppel.* One of the essential elements of such an estoppel is that the rights of another, who has acted in reliance upon the conduct complained of, would be prejudiced if Mr. Peck or his representatives are permitted to claim the benefits of the waiver.

The petitioner has failed to produce evidence tending to show that he or any of the beneficiaries under Mrs. Peck's will has been or will be prejudiced by the conduct of Mr. Peck prior to the time he filed his notice of the waiver of the provisions of his wife's will.

This being so, the petitioner has failed to *make out an estoppel under the law* and the petitionees *are entitled to the benefits of the waiver.''* Transcript, pp. 601, 602.

With these words ringing in my ears, I simply cannot be convinced that an inference can reasonably be drawn from this record that the court below weighed the evidence and decided that it was insufficient to establish an election, pure and simple.

After he had persisted through two courts, the probate court and the county court, that he was entitled to prevail without showing that any one was misled to his prejudice, if he made out a deliberate and intelligent election, and having failed because the court regarded his claim unsound in law, the petitioner is turned out of this Court with the issue yet undetermined, on an inference that the court below was doing one thing, when that court was repeatedly saying that it was doing something else.

All this, without more, would not put the trial court in error. And this, for two reasons: First, it would not amount to reversible error to withhold or ignore a material issue, if in fact, there was no evidence tending to sustain it. Second, it would not amount to reversible error to withhold or ignore an issue, even though it was supported by evidence, unless that issue was a material one; that is to say, taking this very case, unless the distinction between election and estoppel, insisted upon by the petitioner, exists.

We are all, save one, agreed that there was evidence fairly and reasonably tending to show such an election as the petitioner claimed.

And a majority of the court, at least, agree that the distinction drawn by the petitioner between an election and an estoppel exists in the law, and that his position in that behalf was legally sound, and that there is nothing in our former decision, rightly understood to the contrary. This being so, the soundness of the conclusion of the majority depends wholly upon the soundness of the inference drawn.

In the face of what appears in this record, I submit that such an inference cannot by any possibility be "reasonable" nor can the majority's construction of the bill of exceptions be "fair and just."

*The judgment ought to be reversed.*

MUNSON, J., concurs in this dissent.